JOURNAL ENTRY and OPINION
{¶ 1} A jury found defendant Robert Gus guilty of multiple counts of gross sexual imposition against his two stepdaughters. The court sentenced Gus to separate three year terms of incarceration, to run consecutive to each other. In addition, the court classified Gus as a habitual sexual offender. The primary issues in this appeal concern the admission of certain evidence, the sufficiency of the evidence and sentencing.
 {¶ 2} The two victims described their family's living conditions in terms that would have given Charles Dickens pause. Gus lost his job and his house. He and his wife (the mother of the two victims) were forced to seek shelter with the victims' maternal grandparents. The grandparents did not like Gus and forbade him from entering the house, so he and his wife were forced to live in the garage. This animosity toward Gus went so far as to deny him the use of the bathroom, causing him and his wife to use a bucket as a substitute for a toilet. Gus and his wife had the girls collect wood from neighborhood construction sites to fire a stove they used in the garage. One of the victims claimed that Gus disciplined her by beating her with a board that had nails in it.
 {¶ 3} The victims collectively described a lengthy period of sexual abuse where Gus would touch them inappropriately with his fingers or mouth. In other episodes, he would conclude beatings by rubbing their backsides and saying "is this better?" One of the victims testified that Gus would rub his genitals against her or try to rub her genitals. Both victims testified that Gus threatened to kill them if they told anyone what he had done.
 {¶ 4} Eventually, both victims were removed from the custody of their mother and Gus. They had been exhibiting dangerous behavior — one of the victims began to cut herself while the other victim admitted trying to hurt her sister by throwing a vase at her. The maternal aunt who took both girls into her home after their removal from Gus and the mother said that the victims exhibited extremely disruptive behavior, including screaming and banging their heads. One of the victims was placed into a hospital and later transferred to a specialized care facility. This victim was later diagnosed with, among other things, reactive attachment disorder, post traumatic stress disorder and dysthymic disorder.
 I {¶ 5} Gus first complains that there was insufficient evidence to support the guilty verdicts returned against him because the state failed to establish the date of the alleged misconduct and neither victim could provide specific details of the offenses.
 A {¶ 6} Ordinarily, the state is given a certain amount of latitude in child sexual abuse cases and is not strictly held to proving that a crime occurred during a period set forth in the indictment. See State v. Barnecut (1986), 44 Ohio App.3d 149,151.
This is so partly because the specific time and date of the offense are not elements of the offense. See State v. Sellards
(1985), 17 Ohio St.3d 169, 171.
 {¶ 7} While Gus concedes that exact dates are not required, he maintains that the state failed to establish any time frame whatsoever for when the offenses occurred. This argument is disproved by ample testimony showing that the assaults occurred once Gus and his wife moved into the maternal grandparents' garage. The victims moved in with the grandparents in June 2001 and were removed from that home in March 2002. Consequently, the dates of the multiple offenses occurred during that time frame.
 B {¶ 8} When reviewing a challenge to the sufficiency of evidence supporting a conviction, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Scott, 101 Ohio St.3d 31, 2004 Ohio 10, at ¶ 31.
 {¶ 9} R.C. 2907.05(A) prohibits sexual contact with another, not the spouse of the offender, under certain specified circumstances. Among those circumstances, as charged, are that the offender compelled the other person to submit by force or the threat of force. See R.C. 2907.05(A)(1). "Sexual contact" is defined as any touching of an erogenous zone of another, including, but not limited to, the genitals, buttock, breast (if female), or pubic region. See R.C. 2907.01(B).
 {¶ 10} The testimony, viewed in a light most favorable to the state, showed that both victims testified that Gus would touch them in their pubic regions, their breasts and buttocks. The younger victim testified that Gus was "always touching" her genital area with his fingers and mouth. When asked how many times, she replied, "every day." The older victim testified that Gus touched her genital area more than five times, and touched her breast approximately 10 times. In addition, she testified that Gus would make her rub his genitals and that he would rub his genitals against her. Both victims testified that Gus warned them not to tell anyone what he had done, and that he would kill them if they did.
 {¶ 11} This evidence is sufficient to establish the elements of gross sexual imposition as charged in relation to the older victim. The older victim testified to a minimum of 15 incidents, and the jury convicted Gus of only three counts of gross sexual imposition. The jury thus had more than sufficient proof to satisfy conviction on three counts.
 {¶ 12} Likewise, the evidence supports all of the gross sexual imposition counts charged in relation to the younger victim. The jury found Gus guilty of nine counts in this respect, and this number corresponded to testimony that Gus had used his finger and his mouth "more than ten times." It is true that the younger victim made statements that Gus was "always doing it" and that "he did it so much, I don't even remember" the number of times that the touching occurred. Standing alone, these statements might have been problematic, but taken in conjunction with testimony that the offenses occurred more than 10 times, we find the state established sufficient evidence to prove the offenses.
 II {¶ 13} Gus argues that the court erred by admitting victim impact evidence relating to the victims. As we earlier alluded to, the victims were raised in abominable circumstances. They testified that Gus' conduct drove them to abuse themselves to the point where they cut themselves and were placed in psychological facilities. The younger victim tried to kill herself by running into a busy street. Gus now maintains that the admission of these statements constituted plain error, as counsel failed to object at trial.
 {¶ 14} Because Gus did not object to any of the evidence he now cites to as being erroneously admitted, we can only review it for plain error. "Plain error" exists when it is demonstrated that the outcome of the trial clearly would have been different but for the error. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. We undertake notice of plain error with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v.D'Ambrosio, 67 Ohio St.3d 185, 437, 1993-Ohio-170, Long, at paragraph three of the syllabus.
 {¶ 15} Victim impact evidence is excluded because it is irrelevant and immaterial to the guilt or innocence of the accused — it principally serves to inflame the passion of the jury. See State v. White (1968), 15 Ohio St.2d 146. Nevertheless, the state is not wholly precluded from eliciting testimony from victims that touches on the impact the crime had on the victims: "circumstances of the victims are relevant to the crime as a whole. The victims cannot be separated from the crime." State v. Williams, 99 Ohio St.3d 439, 2003-Ohio-4164, at ¶ 43, quoting State v. Lorraine (1993), 66 Ohio St.3d 414,420. In State v. Fautenberry, 72 Ohio St.3d 435, 439-440, 1995-Ohio-209, certiorari denied, 516 U.S. 996, 133 L.Ed.2d 439,116 S.Ct. 534, the supreme court went on to say that "we find that evidence which depicts both the circumstances surrounding the commission of the murder and also the impact of the murder on the victim's family may be admissible during both the guilt and the sentencing phases." (Emphasis omitted.)
 {¶ 16} With these precedents in mind, we are unable to say that admission of the victims' statements was erroneous, much less plain error. The emotional scars of sexual abuse are as real as the physical scars caused by physical assaults. Just as the victim of a felonious assault may testify to the treatment needed as a result of the assault in order to prove that the assault actually did occur, so may the victim of a sexual assault testify to the lingering trauma suffered as a result of that abuse. Of course, there must be a foundation for the emotional trauma, and the state presented testimony from mental health providers and social workers that the victims' acts of cutting themselves were indicative of emotional pain. That evidence was circumstantially sufficient to tie in the course of sexual contact with the adverse consequences suffered by the victims.
 III {¶ 17} Gus next argues that the court erroneously admitted other acts evidence against him in violation of Evid.R. 404(B). As in the preceding assignment of error, he did not object to the testimony, so our review is once again limited to determining whether plain error exists.
 {¶ 18} Evid.R. 404(B) prohibits the use of evidence of other crimes, wrongs, or acts to prove the character of a person in order to show that the person acted in conformity therewith. The evidence may be admissible for another purpose, however, such as to prove identity or knowledge. Id. When other acts evidence is offered for a proper purpose, it is still subject to the limitations placed on all other evidence under Evid.R. 402 and 403. Because there is always the risk that other acts evidence might be unduly prejudicial, the United States Supreme Court has established factors to be considered by the courts: (1) the other crimes evidence must have a proper purpose, (2) the proffered evidence must be relevant, (3) its probative value must outweigh its potential for unfair prejudice, and (4) the court must charge the jury to consider the other crimes evidence only for the limited purpose for which it is admitted. Huddleston v. UnitedStates (1988), 485 U.S. 681, 691.
 {¶ 19} Gus offers a two-page litany of allegedly improper examples of other acts evidence, but some of those examples can be rejected out-of-hand as not falling within Evid.R. 404(B). For example, testimony by the victims concerning the treatment they required, their attempts to kill themselves, even running away from home were not examples of "acts" done by Gus. These were acts of the victims, and thus not within the confines of Evid.R. 404(B) since they bore no relation to showing that Gus acted in conformity therewith.
 {¶ 20} Of the cited examples which do arguably constitute those acts of Gus, we see nothing that would rise to the level of plain error. Many of the acts refer to the living conditions endured by the victims. For example, that they lived in a garage and used buckets in lieu of toilets, that they were forced to walk two miles to school, that one of the victims had to cut wood with a dull saw, and that their water would be turned off. None of these were "acts" of Gus in the sense that they were intended to prove his character and that he acted in conformity therewith; rather, they described conditions existing at the time.
 {¶ 21} Of those statements which are more arguably within Evid.R. 404(B), they suggested that Gus beat the victims when they failed to complete their chores, that Gus stole money from the victims' grandfather, and that he bought and used drugs. None of these acts were offered for a permissible purpose under Evid.R. 404(B) since they failed to show any of the exceptions permitted by the rule.
 {¶ 22} Nevertheless, we cannot say that they rose to the level of plain error in that the outcome of the trial would have been different had they not been admitted into evidence. Indeed, Gus testified in his own defense and, while denying committing the charged acts of abuse, admitted that he lost his job and wound up in financial straits. He denied beating the victims, but did admit that they would receive "swats" or be "smacked" with a paddle. He further admitted to being a paranoid schizophrenic and having bipolar disorder. Although he claimed to have taken his medication during the time frame encompassed by the criminal charges, he admitted that he did not do so "when I first got there [the grandparents' garage], but a little while after." He also pointed out that without his medication, he could not stand to be around other people.
 {¶ 23} In short, the erroneously admitted other acts evidence would not have risen to the level of plain error because other evidence, properly admitted, achieved the same goal. Thus, we cannot say the outcome of trial would have been different had the court sustained objections to the offending testimony.
 IV {¶ 24} The court ordered Gus to serve his three-year sentences consecutively. While Gus agrees that the court made the required findings under R.C. 2929.19(E)(4), he maintains that it did not set forth its reasons for making those findings.
 {¶ 25} As Gus notes, when the court chooses to impose consecutive sentences, it must make specific findings for doing so and give its reasons for making those findings. R.C.2929.14(E)(4) states:
 {¶ 26} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 27} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 28} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 29} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
 {¶ 30} R.C. 2929.14(E)(4) is written in the conjunctive: the court must "make the statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing."State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, paragraph one of the syllabus. We do not require the court to use "magic words" for imposing consecutive sentences, but it must be clear from the context that the court's statements were intended to encompass the relevant provisions of the sentencing statutes.State v. White (1999), 135 Ohio App.3d 481, 486; State v. Moore, Cuyahoga App. No. 84911, 2005-Ohio-4164, at ¶ 7.
 {¶ 31} The court found that consecutive sentences were necessary to protect the public and punish Gus, and were not disproportionate to his conduct and the danger that he posed. It specifically found that a single prison term would not adequately reflect the seriousness of Gus' conduct. The court's reasons for making these findings were based on the emotional and psychological injuries caused to the victims. The court noted that Gus held and abused a position of trust relative to the victims in order to facilitate the offenses. Moreover, the court found that the multiple counts showed that he engaged in a pattern of abuse against the victims.
 {¶ 32} The court's reasons fully justified its findings.
 V {¶ 33} Gus next argues that the court erred by ordering him to serve more than the minimum term of incarceration. His constitutional argument, premised on Blakely v. Washington
(2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, has been rejected by this appellate district in State v. Lett,61 Ohio App.3d 274, 2005-Ohio-2665, so we summarily reject this claim.
 {¶ 34} Likewise, Gus argues that the imposition of consecutive sentences violated his constitutional rights. Again, we considered and rejected this argument in Lett.
 VI {¶ 35} Following trial, the court classified Gus as a habitual sexual offender under R.C. 2950.09(E). Gus maintains that the court erred in doing so since he had no prior conviction for a sexually oriented offense as required by R.C.2950.09(C)(2)(c)(ii). The state concedes this argument, as the record does not show that Gus had the predicate prior conviction for a sexually oriented offense. We therefore sustain this assignment of error.
 VII {¶ 36} Finally, Gus argues that counsel performed ineffectively by failing to seek a severance of counts relating to the separate victims.
 {¶ 37} There is a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; that is, whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. Strickland v. Washington (1984),466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052.
 {¶ 38} Crim.R. 8(A) states that "two or more offenses may be charged in the same indictment * * * if the offenses charged * * * are of the same or similar character, or are based on two or more acts * * * constituting * * * part of a course of criminal conduct." Crim.R. 14 provides for relief from prejudice that results from joinder of offenses or defendants for trial. However, a defendant claiming error in the trial court's refusal to sever offenses or defendants under Crim.R. 14 has the burden of affirmatively showing that his rights were prejudiced by the joinder. State v. Torres (1981), 66 Ohio St.2d 340. In Statev. Schaim, 65 Ohio St.3d 51, 59, 1992-Ohio-31, the supreme court stated:
 {¶ 39} "When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct. If the evidence of other crimes would be admissible at separate trials, any `prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials,' and a court need not inquire further. For this reason, we first address the extent to which evidence of each of these crimes would be admissible in the other trials if the counts were severed as requested by the defendant." (Citations omitted.)
 {¶ 40} The bulk of the evidence relating to the actual offenses offered by the victims would have qualified as viable other acts evidence under Evid.R. 404(B). For example, both victims gave such similar descriptions of the commission of the offenses that the testimony of one could have gone toward establishing plan and opportunity for the other. The ongoing nature of the abuse would have supported the states' offer of this kind of evidence, so it is unclear to us whether a motion to sever would have been granted prior to trial. An attorney has no obligation to make unfounded or futile motions. State v. Wolf,
Cuyahoga App. No. 83632, 2005-Ohio-5023, ¶ 24.
 {¶ 41} In any event, the record would not support a conclusion that the outcome of trial would have been different even if we were to have found that counsel did violate an essential duty to Gus. The state presented compelling evidence of abuse. The testimony of the victims, viewed most favorably to the state, more than supports the jury's verdict, regardless of any omissions by counsel.
 VIII {¶ 42} In conclusion, we overrule all but the seventh assignment of error relating to the habitual sexual offender classification. That finding is vacated and remanded to the court for a new hearing.
Judgment affirmed in part, vacated in part and remanded.
Costs assessed against plaintiff-appellee.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sean C. Gallagher, J., concurs.
 Ann Dyke, P.J., dissents with Separate Opinion.
 DISSENTING OPINION