JOURNAL ENTRY AND OPINION
{¶ 1} Mesha Yaacov appeals her conviction on charges of tampering with evidence following a bench trial. She claims that the evidence is insufficient to support her conviction and that the trial court erred in considering evidence that was not elicited during her trial. We affirm.
 {¶ 2} The record reveals that Mesha Yaacov ("Mesha") is the step-mother to the victim in this case, Y.C.1 Y.C. was born in Israel and lived there with her biological mother until the age of fourteen, at which time she emigrated to the United States to live with her biological father and step-mother in Warrensville Heights. Y.C. and her sister moved in with their father and Mesha in April 2001, and Y.C. claimed that shortly after her move, her father began sexually molesting her.
 {¶ 3} During the time that Y.C. lived with Mesha and her father, first in Warrensville Heights and then in Bedford, Y.C. kept a series of journals in which she detailed her father's abuse. She kept one journal in a dresser drawer in a room that she shared with her sister, describing the diary as a pink book with ballerina shoes on the cover.
 {¶ 4} The abuse continued throughout the time that Y.C. lived 1This court protects the identity of all juveniles involved in criminal proceedings. with her father and Mesha, and Y.C. remained silent about the abuse until January 2004, following an argument with her father during dinner. In apparent anger, she told her father that she was going to "tell on him" and that, specifically, she was going to tell Mesha what he had been doing. Tr. 558. He allegedly replied, "Go ahead." Y.C. and Mesha then left the table and spoke alone, at which time Y.C. told Mesha that her father was molesting her and that she felt that he was, therefore, cheating on Mesha. Y.C. told her that she was going to run away and tell the police, but Mesha allegedly questioned whether this was the right time and expressed concern over who would pay the bills and take care of the family if her father went to jail.
 {¶ 5} Following this conversation, Y.C.'s father collected her belongings and told her sister that Y.C. was leaving. Y.C. spent the night at a friend's house and reported her father's conduct to school officials the next day. The school called Cuyahoga County Department of Children and Family Services ("CCDCFS") and social worker Patricia Altiere was assigned to investigate.
 {¶ 6} Ms. Altiere interviewed Y.C. and determined that she and her younger sister needed to be removed from the home. The following day, Ms. Altiere met with Mesha and determined that Mesha's minor children could not remain at the house with their mother.
 {¶ 7} Following CCDCFS' initial investigation, the Bedford Police Department obtained a search warrant and entered the Yaacov home in search of evidence. The police discovered that Y.C.'s bed and bedroom had been stripped and found her clothing in both garbage bags and a suitcase. The police also discovered a letter, purportedly written by Mesha to her husband, telling him that she had washed the clothing on the third floor of the home, Y.C.'s bedroom, and that she had taken various papers, including her Individual Education Plan (hereafter "IEP") papers and all personal papers "for everyone." State's Ex. 76. Despite their search, the police failed to discover Y.C.'s previously referenced pink diary with ballerina shoes on the cover.
 {¶ 8} In April 2004, Mesha Yaacov was indicted on one count of tampering with evidence, in violation of R.C. 2921.12; one count of obstruction of justice, in violation of R.C. 2921.32, and one count of child endangering, in violation of R.C. 2919.22.
 {¶ 9} Mesha executed a jury waiver and was tried to the bench, simultaneously with her husband's jury trial. Following the close of evidence, Mesha moved for acquittal, which the court granted solely as to the charges of child endangering.
 {¶ 10} Following the close of evidence, and after conducting its own deliberation, the trial court found Mesha guilty of tampering with evidence and not guilty of obstruction of justice. She was sentenced to two years of community control sanctions, and now appeals from this conviction and sentence in the assignments of error set forth in the appendix to this opinion.
 {¶ 11} In her first assignment of error Mesha contends that the evidence is insufficient to support a conviction of tampering with evidence.
 {¶ 12} The standard of review with regard to the sufficiency of evidence is set forth in State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus:
"Pursuant to Criminal Rule 29(A), a court shall not order anentry of judgment of acquittal if the evidence is such thatreasonable minds can reach different conclusions as to whethereach material element of a crime has been proved beyond areasonable doubt."
 {¶ 13} Bridgeman, supra, must be interpreted in light of the sufficiency test as outlined in State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, in which the Ohio Supreme Court held:
"An appellate court's function when reviewing the sufficiencyof the evidence to support a criminal conviction is to examinethe evidence submitted at trial to determine whether suchevidence, if believed, would convince the average mind of thedefendant's guilt beyond a reasonable doubt. The relevant inquiryis whether, after viewing the evidence in a light most favorableto the prosecution, any rational trier of fact could have foundthe essential elements of the crime proven beyond a reasonabledoubt." (Citations omitted.)
 {¶ 14} In the instant case, Mesha was charged with one count of Tampering With Evidence, under R.C. 2921.12, which states in pertinent part:
"(A) No person, knowing that an official proceeding orinvestigation is in progress, or is about to be or likely to beinstituted, shall do any of the following: (1) Alter, destroy,conceal, or remove any record, document, or thing, with purposeto impair its value or availability as evidence in suchproceeding or investigation; (2) Make, present, or use any record,document, or thing, knowing it to be false and with purpose tomislead a public official who is or may be engaged in suchproceeding or investigation, or with purpose to corrupt theoutcome of any such proceeding or investigation."
 {¶ 15} To constitute the crime of tampering with evidence, there must be some indication in the record that Mesha knew that an investigation of the allegations against her husband were either in progress or likely to be instituted, and that she then altered, destroyed, concealed or removed evidence.
 {¶ 16} Y.C. testified that she personally informed her step-mother of the allegations against her father. Mesha's only response was to question the timing of alerting the authorities, and to question who would take care of the family if Mr. Yaacov was removed. Tr. 550. Y.C. then testified that she left the home that very night, leaving behind: a diary in which she had detailed the allegations of molestation, her passport and her social security card. Tr. 576. She had earlier described this diary as one that had been started upon her emigration from Israel to the United States, and described the diary as pink with ballerina shoes on the cover. Tr. 546, 1004. As to the actual existence of the diary, both Y.C. and her sister, E, testified that they had seen the diary days before it went missing and that neither of them had removed it.
 {¶ 17} The court also heard Y.C.'s testimony that she kept this now missing diary in one of her bedroom drawers and that she had discovered before her departure that the diary's lock had been broken. Tr. 767-768. She further detailed that she believed Mesha had broken the lock and opened the diary because the only other person in the home who knew the diary's location was Y.C.'s young step-sister, and she could not have opened the diary. Tr. 767-768.
 {¶ 18} Finally, although Y.C. testified that she washed her own laundry, following Y.C.'s departure, the entire contents of her room had been removed and many items had been cleaned. During a subsequent search of the Yaacovs' home, Bedford police discovered a note from Mesha detailing the fact that she had washed clothing and requesting that Mr. Yaacov return these items to the third floor, Y.C.'s bedroom. State's Ex. 76. She also wrote that, "I have IEP papers and all personal papers for everyone." State's Ex. 76.
 {¶ 19} At trial, Y.C. had detailed the places both in the home and in her father's vehicle, where the alleged molestation took place. The laundering of any evidence, including clothing, sheets and a bedspread, would prevent the identification of any DNA evidence. Moreover, the court heard sufficient testimony regarding Y.C.'s missing diary and missing paperwork to support its conviction on one count of tampering with evidence.
 {¶ 20} For these reasons, we find that Mesha's first assignment of error lacks merit.
 {¶ 21} In her second assignment of error, Mesha contends that the trial court erred in considering her own testimony, because this evidence was not elicited during her trial, but was instead elicited during her husband's trial.
 {¶ 22} In a bench trial, the court must be presumed to have "considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." State v. Post (1987), 32 Ohio St.3d 380, 384. In support of her claim, Mesha cites to the following portion of testimony:
THE COURT: Mr. Buckley, there was more missing than just thediary.
 Her note referenced the fact that she had family members andan EIP, [sic] all kinds of things.
 There were a lot of things that were never returned, inaddition to the diary.
 By her own statements, there were records that she held thatwere never returned.
Tr. 1816, emphasis added.
 {¶ 23} Although the defense takes the trial court's statement in isolation, before pronouncing the verdict against Mesha, the court gave the following explanation:
"The Court has — I did wait a little bit after the juryverdicts. I wanted the testimony the Court heard and the entirecase against your husband to kinda' lose its impact. And then Iwent back, reviewed the testimony that was given with respect toyour case only. I reviewed the jury instructions anddeliberated."
Tr. 1810, emphasis added.
 {¶ 24} Further, after the trial court's fleeting reference to Mesha's words, the dialogue between the trial court and Mesha's defense attorney continued to reference her role in the disappearance of the diary and other relevant papers:
MR. BUCKLEY: Well, okay. Well, actually, I guess we disagreeon the facts.
 Obviously, this diary was missing at some point. As far as thefamily papers that I believe were left, that was because she wasleaving the house with her two children that she had.
 And the other two children — that made up the victim and hersister — that made up the case, they were allegedly going to haveto stay somewhere else supposedly.
 They weren't going to be able to stay in the house if Mr.Yaacov was going to stay there.
 So she had the paperwork with her to bring to the meeting,which was going to be the following Monday morning, with theDepartment of Children and Family Services that were going to befiled.
 Because if the girls were going to be relocated, they mighthave to go to another school, or there might have been a problemwhere they were going to stay. And she had all of that paperworkwith her to this day.
 I think that she still has most of that paperwork in herpossession.
 And she presented to Children and Family Services at somepoint because that was necessary.
 So hopefully that covers what the evidence in this case orwhat the issues were.
 THE COURT: Well, there was additional information that recordsfrom [Y.C.], from her employment — all types of things — inaddition to the diary.
 But anyway, the Court found that you were guilty beyond areasonable doubt at Count 125, with tampering with evidence."
Tr. 1816-1818.
 {¶ 25} Mesha contends that the court's reference to her testimony showed that it considered evidence that was not presented during her bench trial. However, a review of the transcript in its entirety clearly shows that not only did the trial court reference all of the missing items before its isolated reference to her testimony, it also referenced those items that Mesha specifically outlined in the note found by the Bedford police, which was admitted into evidence as the State's Exhibit 76.
 {¶ 26} It is clear that the trial court not only waited until after Mr. Yaacov's jury verdict to review the testimony that specifically applied to Mesha, it then reviewed the jury instructions and deliberated before reaching its verdict. There is nothing in the record to indicate that the Court used Mesha's testimony on her husband's behalf to influence its verdict.
 {¶ 27} Mesha's second assignment of error lacks merit.
 {¶ 28} The judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, .J., and Sweeney, P.J., concur.
 APPENDIX A ASSIGNMENTS OF ERROR
 "I. WHETHER THE EVIDENCE IN THE INSTANT MATTER IS INSUFFICIENTTO SUPPORT A CONVICTION OF TAMPERING WITH EVIDENCE.
 II. WHETHER THE TRIAL COURT ERRED IN CONSIDERING EVIDENCE THATWAS NO [SIC] ELICITED DURING THE APPELLANT'S TRIAL; RATHER THEEVIDENCE WAS ELICTED [SIC] AS PART OF HER HUSBAND'S TRIAL."