JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Abraham Yaacov ("Yaacov"), appeals his conviction, sentence, and sexual predator status. Finding some merit to the appeal, we affirm in part but remand the case for resentencing.
 {¶ 2} In 2004, Yaacov was charged with forty-two counts of rape, forty counts of gross sexual imposition ("GSI"), forty-two counts of sexual battery, and one count of tampering with evidence, all related to the molestation of his minor daughter, "Y.C."[1] The matter proceeded to trial before a jury. The jury convicted Yaacov of all counts except one count of rape and one count of sexual battery, which had been previously dismissed by the trial court.
 {¶ 3} Yaacov was sentenced to an aggregate term of 38 years and designated a sexual predator.
 {¶ 4} The following facts were adduced at trial.
 {¶ 5} Y.C. was born in Israel in 1986. Her mother and father, both American citizens, were living in Israel as part of group known as the Black Hebrew Israelites' Nation of Jerusalem. Yaacov was deported from Israel in 1986. In 2001, Y.C. and her sister, "E.C.," moved to the United States to live with Yaacov and his wife, Mesha, in Warrensville Heights.
 {¶ 6} A few days after moving in with their father, Yaacov physically "examined" both girls to determine that they were virgins. A few weeks later, he began molesting Y.C. The molestation took place at his home in Warrensville Heights, in his trucks, the family van, and at their new house in Bedford. The molestation lasted for three years and included digital penetration, oral sex, touching and oral stimulation of Y.C.'s genital area, and masturbation. Y.C. testified that the molestation occurred frequently throughout those years.
 {¶ 7} In January 2004, following an argument with Yaacov, Y.C. told her father that she was going to tell Mesha about the abuse. Yaacov reportedly told her to "go ahead," so Y.C. told Mesha that Yaacov was molesting her. Mesha questioned whether this was the right time to report this abuse and expressed concern over who would pay the bills and take care of the family if her father went to jail. That evening, Y.C. also told her younger sister, E.C., about the abuse. Y.C. left the house and spent the night with a friend. The next day at school, Y.C. reported the abuse to a high school staff member.
 {¶ 8} A social worker from the Cuyahoga County Department of Children and Family Services came to Y.C.'s school and took temporary emergency custody of Y.C. and E.C. The social worker then went to the Yaacov home, where Mesha told the social worker that Y.C. had reported the abuse to her, but she did not believe her stepdaughter. When the social worker arrived at the house, she observed that all of Y.C.'s belongings had been packed in garbage bags.
 {¶ 9} Bedford police obtained search warrants for the Yaacov home and trucks. The police noted that Y.C.'s room had been cleared out and her bed stripped. Police confiscated three garbage bags containing Y.C.'s clothes, and a suitcase in the kitchen that contained her bedsheets. The police found a handwritten note from Mesha to Yaacov, in which she wrote that she had washed all the clothing in Y.C.'s room and had removed all the family's personal papers.
 {¶ 10} The police found bedding in Yaacov's truck and sent much of Y.C.'s clothing and bedding to the Ohio Bureau of Criminal Identification ("BCI") for testing. BCI found Yaacov's sperm on the bedding found in his truck.
 {¶ 11} During her interview with police, Y.C. told the detective that she kept a diary in which she detailed her father's abuse. Although she left the diary in her dresser drawer the night she disclosed the abuse to Mesha and her sister, police were unable to locate Y.C.'s diary the next day during execution of the search warrant. Although Yaacov testified that he never saw or removed the diary, he admitted that he had cleared out Y.C.'s room the day after she left. He also denied ever touching Y.C. in an inappropriate manner.
 {¶ 12} Yaacov appeals, raising a total of eight assignments of error. The first six assignments of error are raised by Yaacov's appellate counsel, and the remaining assignments of error are raised by Yaacov in his pro se brief. The assigned errors will be combined where appropriate.
 Lack of Specificity {¶ 13} In the first assignment of error, Yaacov argues that he was denied his due process rights because the offenses were not charged with sufficient specificity. Crim.R. 12(C) provides that objections based on defects in the indictment, information, or complaint must be raised before trial. "The plain implication of that requirement is that failure to object waives any error the defect involves." State v. Rivers, Cuyahoga App. No. 83321,2004-Ohio-2566, ¶ 11, quoting State v. Hous, Greene App. No. 02CA116, 2004-Ohio-666. Under Crim.R. 12(H), a party's failure to timely object constitutes a waiver. For good cause shown, however, the court may grant relief from such waiver. Rivers,
supra.
 {¶ 14} In the instant case, Yaacov failed to object to the form of the indictment before trial as required by Crim.R. 12(C). Therefore, he has waived any objection, and must show plain error to overcome the waiver. State v. Sapp, 105 Ohio St.3d 104,2004-Ohio-7008, 822 N.E.2d 1239. An alleged error is plain error only if the error is "obvious," State v. Barnes,94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240, and "but for the error, the outcome of the trial clearly would have been otherwise."State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus. For the following reasons, we find no plain error in the instant case. {¶ 15} The indictment included the period from April 21, 2001 through January 31, 2004.[2] Yaacov now argues that his due process notice requirements were violated, citing the recent decision Valentinev. Konteh (6th Cir. 2005), 395 F.3d 626, to support his argument.
 {¶ 16} First, we note that, as recently stated in State v.Bogan, Cuyahoga App. No. 84468, 2005-Ohio-3412:
"specificity as to the time and date of an offense is not required in an indictment. State v. Shafer, Cuyahoga App. No. 79758, 2002-Ohio-6632. Under R.C. 2941.03, "an indictment or information is sufficient if it can be understood therefrom: * * * (E) That the offense was committed at some time prior to the time of filing of the indictment * * *." An indictment is not invalid for failing to state the time of an alleged offense or doing so imperfectly. The State's only responsibility is to present proof of offenses alleged in the indictment, reasonably within the time frame alleged. Id. at ¶¶ 17-18."
 {¶ 17} Moreover, "where such crimes constitute sexual offenses against children, indictments need not state with specificity the dates of alleged abuse, so long as the prosecution establishes that the offense was committed within the time frame alleged." State v. Barnecut (1988),44 Ohio App.3d 149, 152, 542 N.E.2d 353; see also State v. Gus, Cuyahoga App. No. 85591, 2005-Ohio-6717. This is partly due to the fact that the specific date and time of the offense are not elements of the crimes charged. Gus, supra at ¶ 6. Moreover, many child victims are unable to remember exact dates and times, particularly where the crimes involved a repeated course of conduct over an extended period of time. State v. Mundy (1994), 99 Ohio App.3d 275, 296,650 N.E.2d 502; see State v. Robinette (Feb. 27, 1987), Morrow App. No. CA-652; Barnecut, supra. "The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse." Robinette, supra. Thus, "an allowance for reasonableness and inexactitude must be made for such cases considering the circumstances." Id.; Barnecut, supra at 152.
 {¶ 18} We acknowledge that an exception to this general rule exists when the failure to allege a specific date "results in material detriment to the accused's ability to fairly defend himself, as where the accused asserts an alibi or claims that he was indisputably elsewhere during part, but not all, of the interval specified." State v. Morgan (May 11, 2001), Lucas App. No. L-00-1114, citing State v. Sellards (1985),17 Ohio St.3d 169, 171, 478 N.E.2d 781.
 {¶ 19} Moreover, we find Valentine both factually and legally distinguishable from this case. In Valentine, supra, the defendant was indicted in a forty-count indictment alleging sexual abuse. The court found that the lack of specific dates and times for each count alleging child abuse, where there was no evidence that more information existed, was a due process violation. Id. at 636. The Valentine court focused on the fact that there were no factual bases for forty separate incidents contained in the indictment, the bill of particulars, or in the testimony at trial. Id. at 633. This prevented the jury from considering each count because they were not connected to distinguishable incidents. Id. at 633-634.
 {¶ 20} In Valentine, the court noted that "the 8-year-old victim described `typical' abusive behavior by Valentine and then testified that the `typical' abuse occurred twenty or fifteen times. Outside of the victim's estimate, no evidence as to the number of incidents was presented." Id. at 633. Likewise, inState v. Hemphill, Cuyahoga App. No. 85431, 2005-Ohio-3726, which followed Valentine, the child victim only estimated the number of times the abuse occurred.
 {¶ 21} In the instant case, Y.C. was able to recall when, where, and how the abuse occurred. Although she was not able to give specific dates, partly because her diary was missing, she was able to put each incident in a time frame by detailing where it happened, which house they were living in, where she was working when certain incidents occurred, and who employed Yaacov at the various times she was molested. Moreover, and unlike the situations in Valentine and Hemphill, other evidence was presented to substantiate Y.C.'s claims. E.C. testified that her father often passed through her room late at night to gain access to Y.C.'s room in the attic, and that he and Y.C. would leave the house together. E.C. also testified that she knew of her sister's diary and was able to describe it with particularity.
 {¶ 22} The State attempted to set forth the factual basis for each incident of molestation that occurred over a three-year period. Here, unlike Valentine, the State did not estimate, nor have Y.C. merely estimate, how many times she was molested. Instead the State, through Y.C.'s testimony, established separate occurrences of rape, sexual battery, and GSI.
 {¶ 23} The allegation was that Yaacov molested his daughter repeatedly for almost three years. The bill of particulars identified the victim, her date of birth, and the places the crimes occurred. We conclude that the victim's testimony provided discernible facts to substantiate the charges.
 {¶ 24} We also find that the failure to allege specific dates did not prejudice Yaacov's ability to defend himself because his defense strategy centered on his claim that he never engaged in sexual conduct with his daughter, regardless of the date or place she alleged the abuse took place. See State v. Bennett, Brown App. No. CA2004-09-028, 2005-Ohio-5898, ¶ 33 (remanded by In reOhio Crim. Sentencing Statutes Cases, 109 Ohio St.3d 313,2006-Ohio-2109, 847 N.E.2d 1174); State v. Carnes, Brown App. No. CA2005-01-001, 2006-Ohio-2134, ¶ 22; Barnecut, supra at 151-152. Moreover, Yaacov should not be rewarded for tampering with the evidence which could have supplied specific dates — the victim's diary.
 {¶ 25} Therefore, we find no plain error and conclude the indictment was properly filed and alleged sufficient facts to apprise Yaacov of the charges against him. The first assignment of error is overruled.
 Ineffective Assistance of Counsel {¶ 26} In the second assignment of error, Yaacov argues that he received ineffective assistance of trial counsel.
 {¶ 27} In a claim of ineffective assistance of counsel, the burden is on the defendant to establish that counsel's performance fell below an objective standard of reasonable representation and prejudiced the defense. Strickland v.Washington (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052. To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard or reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." State v. Madrigal, 87 Ohio St.3d 378, 388-389,2000-Ohio-448, 721 N.E.2d 52, citing Strickland, supra, at 687-688.
 {¶ 28} In evaluating whether a petitioner has been denied effective assistance of counsel, the Ohio Supreme Court held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done."State v. Hester (1976), 45 Ohio St.2d 71,341 N.E.2d 304, paragraph four of the syllabus. When making that evaluation, a court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." State v. Lytle (1976),48 Ohio St.2d 391, 358 N.E.2d 623, vacated on other grounds (1978), 438 U.S. 910, 57 L.Ed.2d 1154, 98 S.Ct. 3135;State v. Calhoun, 86 Ohio St.3d 279, 289,1999-Ohio-102, 714 N.E.2d 905.
 {¶ 29} As to the second element of the test, the defendant must establish "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus;Strickland, supra, at 686. This is commonly referred to as theStrickland test, and the failure to prove either prong makes it unnecessary for a court to consider the other. Madrigal, supra, at 389, citing Strickland, supra, at 697.
 {¶ 30} Yaacov claims that his counsel was ineffective for failing to file a motion for a more specific bill of particulars or a motion to dismiss because the indictment was not specific. He also claims that his counsel failed to file a notice of alibi and present witnesses who would have shown that he was working as a trucker and was home only sporadically during the three years the abuse occurred.
 {¶ 31} The decision to call or forego calling witnesses is a tactical decision which is within reasonable trial strategy.State v. Edwards (1997), 119 Ohio App.3d 106, 110,694 N.E.2d 534; State v. Wilson (Apr. 23, 1998), Cuyahoga App. No. 71758. Likewise, the decision regarding which defense to pursue is a tactical decision, and appellate courts will not second-guess what may be tactical decisions by counsel. State v. Mitchell
(Feb. 24, 1998), Cuyahoga App. No. 70821; State v. Evans,
Cuyahoga App. No. 85396, 2005-Ohio-3847. Although Yaacov suggests that calling witnesses to testify that he was "never home" could have provided exculpatory evidence, he fails to reveal what testimony would have been offered. Moreover, Mesha Yaacov, Mesha's mother, and Yaacov himself testified regarding his busy work schedule. Merely asserting that additional witnesses' testimony would have affected the outcome of the trial is insufficient to satisfy Yaacov's burden of proving that his trial counsel was ineffective.
 {¶ 32} We also find that counsel's failure to object to the indictment or bill of particulars did not render her representation ineffective. Yaacov claims that, had counsel obtained more specific information as to when the offenses occurred, counsel could have shown that Yaacov was working and away from home during the relevant times, and the failure to do so prevented him from adequately preparing his case. Again, we note that Yaacov did not establish an alibi defense, and his attorney's choice of defense is a tactical decision. Yaacov's speculation as to what may have occurred if counsel had objected to the bill of particulars does not sufficiently demonstrate ineffective assistance of counsel. See State v. Shadoan, Adams App. No. 03CA764, 2004-Ohio-1756. Moreover, because we find the indictment has the requisite specificity, we cannot fault counsel's performance.
 {¶ 33} We conclude that Yaacov has failed to satisfy either prong of the test for ineffective assistance of counsel; therefore, his second assignment of error lacks merit and is overruled.
 Sufficiency and Manifest Weight of the Evidence {¶ 34} In his third and fourth assignments of error, Yaacov argues that his convictions for rape, sexual battery, GSI, and tampering with evidence are not supported by sufficient evidence and are against the manifest weight of the evidence. Although these arguments involve different standards of review, we consider them together because we find the evidence in the record applies equally to both.
 {¶ 35} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v.Thompkins, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 36} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." Thompkins,
supra, at 387. As the Ohio Supreme Court declared:
"Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" Id. at 387.
 {¶ 37} This court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
 {¶ 38} This court must be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. State v. Bruno, Cuyahoga App. No. 84883,2005-Ohio-1862. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; Statev. Eley (1978), 56 Ohio St.2d 169, 383 N.E.2d 132. Moreover, in reviewing a claim that a conviction is against the manifest weight of the evidence, a reviewing court cannot reverse a conviction unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Garrow (1995), 103 Ohio App.3d 368, 370-371,659 N.E.2d 814.
 {¶ 39} The jury convicted Yaacov of multiple counts of rape, sexual battery, GSI, and one count of tampering with evidence. The statute governing rape, R.C. 2907.02(A)(2), provides that "no person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.03 prohibits sexual battery and provides that no person shall engage in sexual conduct with another when the offender is the other person's natural parent. The GSI statute, R.C. 2907.05(A)(1), provides that no person shall have sexual contact with another, who is not the spouse of the offender, by purposely compelling the other person to submit by force or threat of force.
 {¶ 40} Finally, Yaacov was convicted of one count of tampering with evidence. R.C. 2921.12, the statute prohibiting such conduct, provides that no person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation.
 {¶ 41} Yaacov argues that the trial court could not find him guilty of all the sex-related counts because Y.C.'s testimony did not describe forty separate instances of rape, sexual battery, and GSI. We disagree.
 {¶ 42} As explained under the first assignment of error, Y.C. was able to vividly describe many instances of sexual abuse. She testified that the first time Yaacov abused her was in Israel when she was ten years old. He began molesting her three or four weeks after she arrived in the United States, and the inappropriate behavior began with his examining her to determine if she was a virgin. Yaacov molested her at least once a week and on weekends when she was not menstruating. She testified that the frequency of his abuse correlated with the amount of time he was in town. Y.C. testified that he nearly always molested her in the same way. He would touch her breasts and then he would penetrate her vagina with his finger. Often he would perform oral sex on her. He would masturbate in front of her, and on occasion, he would ejaculate on her. He tried to penetrate her with his penis twice, but she complained it hurt.
 {¶ 43} Y.C. also testified that Yaacov once tried to force her to perform oral sex. Y.C. testified that he always told her that he loved her and that he was doing this to prepare her for future men. Y.C. testified that while she worked at a fast food restaurant in 2002, her father molested her once a week for three months before she went to work, and that the molestation always included his rubbing her breasts and vagina. Y.C. also testified about four overnight trips with her father, during which he molested her.
 {¶ 44} Y.C.'s testimony revealed a pattern of abuse that lasted thirty-three months and took place either in the home or one of Yaacov's motor vehicles. Y.C.'s sister, E.C., testified that she often saw her father pass through her room to awaken Y.C., and that the two would leave together late at night and not return for hours. E.C. also testified that Y.C. had a pink diary with ballerina shoes on it. When asked by the prosecutor "what about your sister [Y.C.], how many times would you say she went out to the 18 wheeler with him in the middle of the night?" E.C. replied "too many to count."
 {¶ 45} We also find that the convictions are not against the manifest weight of the evidence. Although many of the witnesses Yaacov presented testified that Y.C. was untruthful and that Yaacov never left at night with Y.C., other witnesses corroborated Y.C.'s version of events. Y.C.'s mother testified that she confronted Yaacov when she saw him standing inappropriately close to Y.C.Y.C.'s sister testified as to the existence of the pink diary and that Yaacov often came for Y.C. late at night. Also, a representative from BCI testified that Yaacov's sperm was found on a blanket in his truck. Although Yaacov testified that he never touched his daughter inappropriately, it was within the jury's province to determine whose testimony to believe.
 {¶ 46} From the foregoing, we hold that, after viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. The State's evidence was sufficient to convince the average juror of the charges beyond a reasonable doubt, and the trial court properly denied Yaacov's motion for acquittal. Further, we find that his convictions were not against the manifest weight of the evidence. Therefore, we overrule the third and fourth assignments of error.
 Sexual Predator Classification {¶ 47} In his fifth assignment of error, Yaacov argues that the trial court erred in classifying him as a sexual predator.
 {¶ 48} A sexual predator is defined in R.C. 2950.01(E) as a person who has been convicted of or pled guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses. Thus, before classifying an offender as a sexual predator, the court must find by clear and convincing evidence that an offender is likely to commit a sexually oriented offense in the future. R.C.2950.09(B)(4).
 {¶ 49} In State v. Eppinger, infra, the Ohio Supreme Court defined the clear and convincing evidence standard as follows:
"Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."
 {¶ 50} State v. Eppinger, 91 Ohio St.3d 158, 164,2001-Ohio-247, 743 N.E.2d 881, citing Cross v. Ledford (1954),161 Ohio St. 469, 477, 120 N.E.2d 118. In reviewing a trial court's decision based upon clear and convincing evidence, an appellate court must examine the record to determine whether sufficient evidence exists to satisfy the requisite degree of proof. State v. Schiebel (1990), 55 Ohio St.3d 71, 74,564 N.E.2d 54.
 {¶ 51} Pursuant to R.C. 2950.09(B)(3), in making a determination as to whether an offender is a sexual predator, the trial court must consider all relevant factors, including but not limited to the following: the offender's age and prior criminal record, the age of the victim, whether the sexually oriented offense involved multiple victims, whether the offender used drugs or alcohol to impair the victim, whether the offender completed any sentence imposed for any conviction, whether the offender participated in available programs for sexual offenders, any mental disease or disability of the offender, whether the offender engaged in a pattern of abuse or displayed cruelty toward the victim, and any additional behavioral characteristics that contribute to the offender's conduct. R.C.2950.09(B)(3)(a)-(j).
 {¶ 52} R.C. 2950.09(B)(2) does not require that each factor be met. It simply requires the trial court consider those factors that are relevant. State v. Cook, 83 Ohio St.3d 404, 426,1998-Ohio-291, 700 N.E.2d 570; State v. Grimes (2001),143 Ohio App.3d 86, 89, 757 N.E.2d 413. Further, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court judge." Schiebel, supra at 74, citing Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 53} Yaacov argues that the State failed to establish by clear and convincing evidence that he is likely to engage in one or more sexually oriented offenses in the future. Yaacov points to his age at the time of sentencing (forty-four), his lack of criminal history, that there was only one victim, that there was no evidence of the use of drugs or alcohol to impair the victim, that the victim did not suffer from mental illness or disability, and that there was no physical cruelty displayed. Yaacov also argues that the psychological report found that he was not likely to reoffend.
 {¶ 54} The record demonstrates that the court considered all the factors under R.C. 2950.09(B). Additionally, the court made very specific and thorough findings regarding each factor and found by clear and convincing evidence that Yaacov is likely to commit a sexually oriented offense in the future. We agree.
 {¶ 55} At the time the offenses were committed, the victim was 13 to 17 years of age. The court noted the extended period over which the abuse occurred, that Yaacov displayed mental cruelty and exerted control over Y.C., that he used his position of authority to facilitate the crimes, and that he bribed Y.C. with gifts.
 {¶ 56} Therefore, based on the evidence in the instant case, we find clear and convincing evidence exists to support the trial court's decision classifying Yaacov as a sexual predator. The fifth assignment of error is overruled.
 Consecutive Sentences {¶ 57} In the sixth assignment of error, Yaacov argues that the trial court erred by sentencing him to consecutive sentences.
 {¶ 58} The trial court relied on the provisions of R.C.2929.14(E)(4) to sentence Yaacov to consecutive terms in prison. The Ohio Supreme Court has recently declared that statute unconstitutional and excised it from the statutory scheme. Statev. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, applying United States v. Booker (2005), 543 U.S. 220,125 S.Ct. 738, 160 L.Ed.2d 621; Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, and Apprendi v. NewJersey (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435.
 {¶ 59} In Foster, supra at ¶¶ 61, 64, and 67, the Ohio Supreme Court held that judicial factfinding to overcome the minimum sentence or to impose the maximum or a consecutive sentence is unconstitutional in light of Blakely. The Foster
court also severed and excised, among other statutory provisions, R.C. 2929.14(E)(4), because imposing the maximum or a consecutive sentence requires judicial factfinding. Id. at ¶¶ 97 and 99. "After the severance, judicial factfinding is not required before a prison term may be imposed within the basic ranges of R.C.2929.14(A) based upon a jury verdict or admission of the defendant." Foster, supra at ¶ 99. As a result, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings and give reasons for imposing maximum, consecutive or more than the minimum sentence." Foster, supra at paragraph seven of the syllabus, and State v. Mathis, 109 Ohio St.3d 54,2006-Ohio-855, 846 N.E.2d 1, paragraph three of the syllabus. Nevertheless, defendants that were sentenced under unconstitutional and now void statutory provisions must be resentenced. Foster, supra at ¶¶ 103-106.
 {¶ 60} We find that the court relied on a severed, excised, and unconstitutional statute in imposing Yaacov's sentence. Therefore, we vacate Yaacov's sentence and remand the matter to the trial court for resentencing. Thus, the sixth assignment of error is sustained.
 Imposition of Fines and Costs {¶ 61} In his first supplemental assignment of error, Yaacov argues that his counsel was ineffective for failing to file an affidavit of indigency. In his second supplemental assignment of error, Yaacov argues that the trial court erred by imposing fines and costs without determining if his financial status had changed. We need not address these arguments because we have vacated the sentence and remanded for resentencing. Therefore, these two assignments of error are overruled as moot.
 {¶ 62} Accordingly, the convictions and sexual predator classification are affirmed. The sentence is vacated, and the case is remanded for resentencing.
It is ordered that appellee and appellant bear their own costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the common pleas court for resentencing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Mary Eileen Kilbane, J., and Patricia Ann Blackmon, J. concur.
[1] Yaacov's wife and co-defendant, Mesha Yaacov, was convicted of tampering with evidence. Her conviction was recently affirmed by this court. State v. Yaacov, Cuyahoga App. No. 86687,2006-Ohio-2884.
[2] In fact, when the State sought to amend the indictment at trial to include a more specific date, Yaacov objected, arguing he did not want specific dates on the indictment.