{¶ 1} Appellant Terrence Eads appeals his conviction for rape, gross sexual imposition, and kidnapping. Eads assigns eight errors for our review.[1]
 {¶ 2} Having reviewed the record and pertinent law, we affirm Eads' convictions. The apposite facts follow.
 {¶ 3} The Cuyahoga County Grand Jury returned a twenty-two count indictment against Eads, including eleven counts of rape and two counts of kidnapping of juvenile T.M.,[2] which took place between November 26, 1996 and June 2001. The grand jury also indicted Eads on one count each of rape and kidnapping of juvenile T.B., which took place between November 7, 1998 and November 6, 1999.
 {¶ 4} In addition, the grand jury indicted Eads on two counts of attempted rape and one count of gross sexual imposition against CM., which took place between August 4, 1997 and August 3, 1999. Finally, the grand jury indicted Eads on three counts of rape and one count of kidnaping of juvenile B.W., which took place between November 2, 1997 and June 10, 2001.
 {¶ 5} Prior to the matter proceeding to a jury trial, the State amended several of the rape charges to the lesser included offense of gross sexual imposition. In addition, the trial court dismissed several other charges.
 {¶ 6} At trial, the State presented the testimony of twelve witnesses including the testimony of juvenile victims TM, TB, CM and BW, who collectively described separate incidents of sexual abuse by Eads. Eads took the stand in his own defense. In addition, Eads presented the testimony of twelve witnesses, which included nine members of the Cleveland Police Department Third District's Vice Unit for whom Eads served as an undercover informant for underage liquor sales.
 {¶ 7} At the conclusion of the trial, the jury found Eads guilty of one count of forcible rape, two counts of gross sexual imposition, and one count of kidnapping involving TM; one count each of forcible rape and kidnapping involving TB; and one count each of attempted rape and gross sexual imposition involving CM. On December 13, 2005, the trial court sentenced Eads to life in prison with the possibility of parole in ten years.
 Force {¶ 8} In the first assigned error, Eads argues the trial court charged the jurors with the wrong definition of force. We disagree.
 {¶ 9} In the instant case, the jury found Eads guilty of two counts of forcible rape under R.C. 2907.02, which provides in pertinent part as follows:
 "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 * * *
 "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
 '* * *
 "(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 "(B) Whoever violates this section is guilty of rape, an aggravated felony of the first degree. * * * If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(1)(b) of this section shall be imprisoned for life."
 {¶ 10} The record before us indicates that the trial court instructed the jury regarding the element of force as follows:
 "Force means any violence, compulsion or constraint physically exerted by any means upon or against a person or thing. When the relationship between the victim and the defendant is one of child and family friend, the element of force need not be openly displayed or physically brutal. It can be subtle or slight and psychologically and emotionally powerful. If you find beyond a reasonable doubt that under the circumstances in evidence the victim's will was overcome by fear or duress or intimidation, the element of force has been proven."[3]
 {¶ 11} Eads contends that the above jury instruction was erroneous. We are not persuaded.
 {¶ 12} R.C. 2901.01(A) defines the element of force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." Further, in State v. Eskridge,[4] the Ohio Supreme Court held that "the force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other."[5]
 {¶ 13} A review of the record indicates that the above jury instruction comports with the definition of force in R.C. 2901.01(A) as well as the Ohio Supreme Court's pronouncement in Eskridge. Here, all three victims were under the age of thirteen when the offenses took place. Further, Eads lived approximately two houses away from TM's grandparents, was very close friends with TM's older brother Demetrius, and was generally regarded by all the victims to be a family friend. Finally, all the victims testified that Eads was significantly physically larger than they were.
 {¶ 14} Moreover, the record is replete with evidence of Eads' use of force to commit the offenses. Victim TM, who was fourteen years old at the time of trial, testified that she was six or seven years old when the first rape occurred. TM testified as follows:
 "The first time of my memory, there was two occasions. When his sister Katisha used to braid my hair. He told me, you go to the house. She said you could come down, because she was on her way home from work. I get down there and he let me up. And I sat on the couch, and he was sitting next to me, and he started rubbing my legs, and he kept touching me. And I was telling him to stop, but he wouldn't stop.
 So, then the next thing I know, I'm on the floor, and he's dragging me to his room.
 "So, as he is dragging me to his room, I was telling him to get off of me. And I am screaming to stop. So, then he ties my hands up to the head board and throws me on the bed, and takes my clothes off. And that's one of the times he actually had sex with me."[6]
 TM also testified as follows about the second time Eads raped her:
 "Q. Can you describe what happened this second time on the back porch?
 A. I know I went down there to get something for my brother. I am not sure what it was. But he told me to meet him at the back door. So, I went in the back door to get whatever it was for my brother. An that's why I was on the back porch, and somehow I ended up on the floor, not in so good of a position, him on top of me.
 "* * *
 "He pulled my pant off again, but I still had my shirt on. And that's when he put his penis in my vagina again, the second time at his house."[7]
Finally, TM testified that Eads threatened to kill her if she said anything about the rapes.[8]
 {¶ 15} Victim TB, a cousin of TM, was sixteen years old at the time of the trial. TB testified that many of the boys in the neighborhood would wrestle each other. TB testified that when he was approximately nine years old one such wrestling match culminated with Eads raping him. The following exchange took place:
 "Q. Okay. So what happened during this WWF Wrestling or freestyle wrestling?
 A. We began wrestling like we usually do, and that's when he had me like, he picked me up and like slammed me, but like a wrestling move though.
 Q. After he slammed you, what's your position. What's your body position?
 A. I was on my stomach.
 Q. Okay. Where is Terrence?
 A. On top of me.
 "Q. What happened next?
 A. He like, first he was just like holding me down, and then that's when he pulled my shorts down.
 "Q. Okay. What are you doing while that's occurring? Like what are you doing? Does he say anything?
 A. No.
 Q. Okay. After he pulled down your shorts and your underwear, what happened after that? Take a deep breath. Okay. And tell us what happened next? Did something happen Tomario?
 A. Yes.
 Q. What happened?
 A. He put his penis inside of me.
 Q. He put his penis inside of you?
 A. Yes.
 Q. Where inside did he put his penis?
 A. In my anus."[9]
 {¶ 16} Finally, TB testified that when the rape occurred he was about five feet three inches, while Eads was approximately five feet ten inches and weighed in excess of two hundred pounds.
 {¶ 17} Victim CM, cousin of TM and TB, was nineteen years old at the time of trial. CM testified that she has known Eads since she was five or six years old. Further, CM testified that when she was about twelve years old, Eads attempted to rape her. The following exchange took place:
 "Q. All right. So describe the activity that takes place in the living room, the front room where the TV is, from that point forward from when Terrence arrives onward?
 A. He came in, and we were all sitting there watching T.V. He-well, Demitrius fell asleep there in the lounge chair. And it was just me, Terrence and Tiara, and we were watching TV. Tiara went upstairs to get something, and I went in the kitchen to get something to drink. And from that point, Terrence followed me in the kitchen, and the lights were off and I reached up for a cup from the cupboard.
 "* * *
 "A. And he came towards me, and he started kissing me on my neck.
 "Q. What happens after that?
 A. And I pushed him away. And then I was walking towards to go back to the living room, and then he grabbed me again, and put me towards the cupboards. And he started kissing me on the lips and trying to go up my skirt. And he was touching my but and all. And then he became erect and then he tried to take down my pants. And at that time, Tiara was coming downstairs.
 "* * *
 "Q. Did you try to move away from him?
 A. Yes.
 Q. Were you successful in trying to move way away from him?
 A. No.
 Q. Why not?
 A. Because he had his weight on me."[10]
 {¶ 18} A review of the above testimonial evidence indicates that Eads physically compelled and restrained the three minor victims by force. At the time of trial, Eads was twenty-three years old, five feet ten inches tall, and weighed approximately three hundred and thirty pounds. All three victims testified that Eads appeared to be the same size that he was when he committed the offenses. Eads tied TM to the head board and used his size to subdue her. Eads also took advantage of his size to subdue TB on the floor when he raped him. Finally, CM testified that she could not get way from Eads when he attempted to rape her in the kitchen. Consequently, Eads' actions against the three minor victims constitute force as defined in R.C. 2901(A)(1).
 {¶ 19} We also conclude that Eads' actions comports with the Ohio Supreme Court's pronouncement in Eskridge. Eads' imposing size and age difference, along with his position as an older family friend to all three victims supports the jury instruction given. The trial court properly instructed the jury regarding the use of force. Accordingly, we overrule the first assigned error.
 Sufficiency {¶ 20} In the second assigned error, Eads argues that his conviction for rape and kidnapping are not supported by sufficient evidence. We disagree
 {¶ 21} A challenge to the sufficiency of the evidence supporting a conviction requires the appellate court to determine whether the State met its burden of production at trial.[11] On review for legal sufficiency, the appellate court's function is to examine evidence admitted at trial and determine whether such evidence, if believed, would convince the average person of the defendant's guilt beyond a reasonable doubt.[12] In making its determination, an appellate court must view the evidence in a light most favorable to the prosecution.[13]
 {¶ 22} In the first assigned error, we concluded based on the evidence before this court that Eads engaged in sexual conduct with TM, TB, and CM by force. This testimony, viewed in a light most favorable to the State is sufficient to establish the elements of rape. The jury, thus had more than sufficient proof to satisfy Eads' conviction for rape. Consequently, we will focus our discussion of the second assigned error as it relates to Eads' contention that there was insufficient evidence to convict him of kidnapping.
 {¶ 23} Kidnapping is defined in R.C. 2905.01 as follows:
 "(A)No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incom-petent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
"* * *
 "(4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will[.]"
 {¶ 24} In this matter, the State's evidence demonstrated that Eads restrained the liberty of all three victims. The evidence indicated that Eads dragged TM from the living room to his bedroom and tied her to the head board to facilitate the commission of the first rape offense. In the second offense, Eads restrained TM on the back porch. Additionally, Eads went beyond the bounds of playful wrestling by using his imposing size to restrain TB on the floor in order to rape him. Finally, in the attempted rape of CM, Eads restrained her range of movement by pinning her against the kitchen cupboard. CM testified that she tried to move, but Eads had his weight against her.
 {¶ 25} The foregoing evidence, viewed in a light most favorable to the State is sufficient to establish the elements of kidnapping. Accordingly, we overrule the second assigned error.
 Manifest Weight {¶ 26} In the third assigned error, Eads argues the underlying convictions are against the manifest weight of the evidence. We disagree.
 {¶ 27} When an appellant challenges a conviction on manifest weight grounds, we review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, "and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."[14] The discretionary power to grant a new trial should be exercised only in exceptional cases in which the evidence weighs heavily against the conviction.[15]
 {¶ 28} Stated succinctly, a reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all elements of an offense have been proven beyond a reasonable doubt.[16]
 {¶ 29} Eads specifically contends that the State failed to introduce any evidence regarding the use of force. We have previously concluded that the evidence overwhelmingly established that Eads used force to commit the sexual offenses against the three minor victims, consequently, this contention is without merit.
 {¶ 30} Eads also contends that the testimony of the complaining witnesses were untrustworthy. It is fundamental that the trier of fact is to determine the weight given the evidence and the credibility given to the testimony of witnesses.[17] Accordingly, the trier of fact may believe all, part, or none of the testimony of each witness who appears before it.[18] We also acknowledge that a trier of fact is much better situated than an appellate court to view the witnesses and observe their demeanor, their gestures and their voice inflections, and to use those observations to weigh the credibility of their testimony.[19] Thus, reviewing courts should defer to the trier of fact on matters of evidentiary weight and witness credibility.
 {¶ 31} In the case at bar, Eads argues, that the victims' testimony is not credible. The jury, however, accepted the victims' testimony and version of the facts. This was well within the trier of fact's province and we see no reason why we should reject the fact finder's determination. Thus, after our review of the evidence, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice by choosing to believe the victims' testimony. The State's case provides substantial evidence upon which the trier of fact could reasonably conclude, beyond a reasonable doubt, that each element of the charged offenses had been established. Accordingly, we overrule the third assigned error.
 Confrontation Rights {¶ 32} In the fourth assigned error, Eads argues his right to confrontation was violated when the trial court permitted Lillie McCray to testify via closed-circuit television. We disagree.
 {¶ 33} The Confrontation Clause of the Sixth Amendment, as applied to the states through the Fourteenth Amendment, guarantees a defendant the right to confront witnesses against him in both state and federal criminal prosecutions.[20]
 {¶ 34} In the instant case, the record reveals that Lillian McCray, the grandmother of TM, TB, and CM, was hospitalized at University Hospital in Cleveland at the time of the trial. McCray, a diabetic, had recently had all the toes on her left foot and one toe on her right foot amputated. The trial court allowed McCray to testify by means of a live video conference via satellite from her hospital room to the courtroom. The television screen measured ten feet wide by ten feet high, which provided ample opportunity for the jury to observe McCray's demeanor. McCray was administered an oath in front of the judge, jury, attorneys and Eads.[21] After McCray testified, Eads trial counsel cross examined her.
 {¶ 35} We conclude based on record before us that the use of the above video conference procedure to procure McCray's testimony did not violate the Confrontation Clause, nor did it prejudice Eads. Accordingly, we overrule the fourth assigned error.
 Specificity of Indictment {¶ 36} In the fifth assigned error, Eads argues the State failed to indict him with sufficient specificity. We disagree.
 {¶ 37} Specificity as to the time and date of an offense is not required in an indictment.[22] Under R.C. 2941.03, "an indictment or information is sufficient if it can be understood therefrom: * * * (E) That the offense was committed at some time prior to the time of filing of the indictment * * *."[23] An indictment is not invalid for failing to state the time of an alleged offense or doing so imperfectly.[24]
The State's only responsibility is to present proof of offenses alleged in the indictment, reasonably within the time frame alleged.[25]
 {¶ 38} Moreover, where such crimes constitute sexual offenses against children, indictments need not state with specificity the dates of alleged abuse, so long as the prosecution establishes that the offense was committed within the time frame alleged.[26] This is partly due to the fact that the specific date and time of the offense are not elements of the crimes charged.[27] Moreover, many child victims are unable to remember exact dates and times, particularly where the crimes involved a repeated course of conduct over an extended period of time.[28] Thus, an allowance for reasonableness and inexactitude must be made for such cases considering the circumstances.[29]
 {¶ 39} We acknowledge that an exception to this general rule exists when the failure to allege a specific date results in material detriment to the accused's ability to fairly defend himself, as where the accused asserts an alibi or claims that he was indisputably elsewhere during part, but not all, of the interval specified.[30]
 {¶ 40} In the instant case, each count for which Eads was convicted was connected to a distinguishable incident. The three victims testified to specific time frames wherein the offenses took place. TM testified that Eads first raped her when she was about six years old. TB testified that he was nine years old when Eads raped him. Finally, CM testified that she was twelve years old when Eads attempted to rape her.
 {¶ 41} We conclude that the victims' testimonies provided discernible facts to substantiate the charges against Eads. We also conclude that the failure to allege specific dates did not prejudice Eads' ability to defend himself because his defense strategy centered on his claim that he never engaged in sexual conduct with any of the victims, regardless of the date or place they alleged the abuse took place.[31] Therefore, we conclude the indictment was properly filed and alleged sufficient facts to apprise Eads of the charges against him. Accordingly, we overrule the fifth assigned error.
 Pre-Indictment Delay {¶ 42} In the sixth assigned error, Eads argues he was prejudiced by a pre-indictment delay of nine years during which time a key witness died. We disagree.
 {¶ 43} In United States v. Lovasco,[32] the United States Supreme Court acknowledged that the Due Process Clause has a limited role to play in protecting against oppressive pre-indictment delay. Proof of prejudice is generally a necessary but not sufficient element of a due process claim The due process inquiry must consider the reasons for the delay as well as the prejudice to the accused.[33]
 {¶ 44} In Lovasco, the court held that due process is not violated by an "investigative delay" in prosecution, even if the defendant is "somewhat prejudiced" by this delay. The court distinguished investigative delay from delay undertaken for the purpose of gaining a tactical advantage, noting that an investigative delay is:
 "not so one sided. Rather than deviating from elementary standards of `fair play and decency,' a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. Penalizing prosecutors who defer action for these reasons would subordinate the goal of `orderly expedition' to that of `mere speed."[34]
 {¶ 45} In the instant case, the delay was not caused by government action or inaction.[35] The victims did not report the crimes to the police until nine years later. Their delay in reporting the crimes cannot be ascribed to the State for purposes of finding a violation of Eads' due process rights. Accordingly, we overrule the sixth assigned error.
 Ineffective Assistance of Counsel {¶ 46} In the seventh assigned error, Eads argues trial counsel was ineffective for failing to seek severance of the counts that related to different witnesses. We disagree.
 {¶ 47} We review a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v. Washington[36] UnderStrickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance.[37] To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different.[38] Judicial scrutiny of a lawyer's performance must be highly deferential.[39]
 {¶ 48} Pursuant to Crim.R. 8(A), joinder of multiple offenses is permitted when the charged offenses are "of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Crim.R. 14 provides that if it appears prejudice will result from joinder, the court shall order election or separate trials, grant severance, or other relief. The Supreme Court has stated that in determining whether the defendant suffered prejudice from joinder, the reviewing court must ask: whether evidence of the other crime would have been admissible even if severed, and if not, whether evidence of each is so simple and distinct that the jury could clearly segregate the evidence.[40]
 {¶ 49} According to the Ohio Supreme Court, joinder is to be liberally permitted.[41] The law favors joinder for public policy reasons, such as to conserve judicial economy and prosecutorial time; to conserve public funds by avoiding duplication inherent in multiple trials; to diminish the inconvenience to public authorities and witnesses; to promptly bring to trial those accused of a crime; and to minimize the possibility of incongruous results that can occur in successive trials before different juries.[42]
 {¶ 50} In the instant case, the evidence was direct and not confusing. Each victim testified about separate offenses and provided sufficient evidence of each offense charged. In addition, the victims were all cousins and were acquainted with Eads as an older family friend and neighbor of their grandparents. Further, the offenses occurred in the same general time frame and occurred in the same general location. Therefore, trial counsel was not ineffective for not moving to sever the counts, because the case involved very "simple and distinct" evidence.[43]
 {¶ 51} Moreover, there is nothing in the record before us that suggests that Eads was prejudiced by joining the charges in one trial. Eads simply asserts that severed trials would have relieved the danger that the jury would find him guilty of some of the counts based on evidence relating to other counts. Eads relies on State v.Schaim[44] to support his argument. We conclude Schaim is distinguishable.
 {¶ 52} In Schaim, the Ohio Supreme Court found the trial court erred by not severing the counts because trying the defendant's rape of his daughter with that of his committing gross sexual imposition of a co-worker, would allow the jury to consider "other act" evidence, which otherwise would have been inadmissible, and which could have affected the jury's determination regarding intent and credibility.
 {¶ 53} In the instant case, there was sufficient evidence to convict Eads of each charge relating to each victim without necessitating the evidence from one case to prove the other. The testimony by the three victims provided overwhelming evidence of Eads' guilt. Therefore, there is no evidence that prejudice occurred by joining the offenses for one trial. Accordingly, we overrule the seventh assigned error.
 Victim Impact Statement {¶ 54} In the eighth assigned error, Eads argues that trial counsel was ineffective for failing to object to victim impact evidence that TM engaged in self mutilation. We disagree.
 {¶ 55} Victim impact evidence is excluded because it is irrelevant and immaterial to the guilt or innocence of the accused — it principally serves to inflame the passion of the jury.[45] Nevertheless, the State is not wholly precluded from eliciting testimony from victims that touches on the impact the crime had on the victims: "circumstances of the victims are relevant to the crime as a whole. The victims cannot be separated from the crime."[46] In State v. Fautenberry,[47] the Supreme Court went on to say that "we find that evidence which depicts both the circumstances surrounding the commission of the murder and also the impact of the murder on the victim's family may be admissible during both the guilt and the sentencing phases."[48]
 {¶ 56} With these precedents in mind, we decline to conclude that trial counsel was ineffective for failing to object to the victim impact evidence. The emotional scars of sexual abuse are as real as the physical scars caused by physical assaults.[49] Just as the victim of a felonious assault may testify to the treatment needed as a result of the assault in order to prove that the assault actually did occur, so may the victim of a sexual assault testify to the lingering trauma suffered as a result of that abuse.[50]
 {¶ 57} Here, the record reveals that TM's uncle, Clantonio Miles, discovered twenty to fifty cuts on TM's arms, which propelled him to talk with TM about her life. TM disclosed to Miles that she began mutilating her arms as a result of being raped by Eads. This discovery led to the subsequent disclosure by the other victims regarding the offenses that Eads had also committed against them.
 {¶ 58} We conclude that the evidence of TM's self-mutilation was necessary to show what led to Eads being prosecuted. Therefore, trial counsel was not ineffective for failing to object to the victim impact evidence. Accordingly, we overrule the eighth assigned error.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., A.J., and SEAN C. GALLAGHER, J., CONCUR
APPENDIX
 Assignments of Error
 "I. The trial court erred when it provided the jurors with the wrong definition of `force,' an essential element of the crime of rape."
 "II. The appellant's convictions for rape and kidnapping in the instant matter are not supported by sufficient evidence."
 "III. Each of the underlying convictions are against the manifest weight of the evidence."
 "IV. Mr. Eads' right to confrontation and due process of law was denied when the State was permitted to present testimony of a witness via closed-circuit television."
 "V. The appellant's federal and state rights to due process rights were violated where the State failed to indict the appellant with sufficient specificity."
 "VI. Appellant's rights to due process of law was violated by pre-indictment delay of nine years, during which at least one key witness died."
 "VII. Trial counsel was ineffective for failing to seek severance of the counts that related to different complaining witnesses."
 "VIII. Trial counsel was ineffective for failing to object to victim impact evidence and evidence that the State's victim engaged in self mutilation."
[1] See Appendix.
[2] We refer to the children by their initials pursuant to this court's established policy not to disclose the names of children.
[3] Tr. at 1586-1587.
[4] (1988 ), 38 Ohio St.3d 56.
[5] Id.
[6] Tr. at 803-804.
[7] Tr. at 837-838.
[8] Tr. at 822.
[9] Tr. at 524-525.
[10] Tr. at 589-591.
[11] State v. Thompkins (1997), 78 Ohio St.3d 380.
[12] Id.; State v. Fryer (1993), 90 Ohio App.3d 37.
[13] Id. at 43.
[14] State v. Martin (1983), 20 Ohio App.3d 172,175, citing Tibbs v.Florida (1982), 457 U.S. 31, 38, 42. See, also, State v. Thomkins
(1997), 78 Ohio St.3d 380.
[15] Martin, citing Tibbs. See, also, State v. Thomkins (1997),78 Ohio St.3d 380.
[16] State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus; State v. Eley (1978), 56 Ohio St.2d 169, syllabus.
[17] See State v. Dye (1998), 82 Ohio St.3d 323, 329, 1998-Ohio-234;State v. Frazier (1995), 73 Ohio St.3d 323, 339, 1995-Ohio-235;State v. Williams (1995), 73 Ohio St.3d 153, 165, 1995-Ohio-275.
[18] See State v. Long (1998), 127 Ohio App.3d 328, 335; State v.Nichols (1993), 85 Ohio App.3d 65, 76; State v. Harriston (1989),63 Ohio App.3d 58, 63.
[19] See State v. Shin (1997), 118 Ohio App.3d 637, 641; Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
[20] Delaware v. Van Arsdall (1986), 475 U.S. 673, 679,106 S. Ct. 1431, 89 L. Ed.2d 674.
[21] Tr. at 1034
[22] State v. Bogan, Cuyahoga App. No. 84468, 2005-Ohio-3412;State v. Shafer, Cuyahoga App. No. 79758, 2002-Ohio-6632.
[23] Id.
[24] State v. Yaacov, Cuyahoga App. No. 86674, 2006-Ohio-5321.
[25] Id.
[26] State v. Barnecut (1988), 44 Ohio App.3d 149, 152. See alsoState v. Gus, Cuyahoga App. No. 85591, 2005-Ohio-6717.
[27] Gus, supra at P6.
[28] State v. Mundy (1994), 99 Ohio App.3d 275, 296. See State v.Robinette (Feb. 27, 1987), 5th Dist. No. CA-652; Barnecut, supra.
[29] Id.; Barnecut, supra at 152.
[30] State v. Morgan (May 11, 2001), 6th Dist. No. L-00-1114. See also State v. Sellards (1985), 17 Ohio St.3d 169, 171.
[31] See State v. Bennett, 12th Dist. No. CA2004-09-028,2005-Ohio-5898; State v. Carnes, 12th Dist. No. CA2005-01-001,2006-Ohio-2134; Barnecut, supra at 151-152.
[32] (1977), 431 U.S. 783, 789, 97 S.Ct. 2044, 52 L. Ed.2d 752.
[33] Id. at 790.
[34] Id., quoting Smith v. United States (1959), 360 U.S. 1, 10,79 S. Ct. 991, 3 L. Ed. 2d 1041.
[35] See, e.g., United States v. Cruikshank (1876), 92 U.S. 542, 554,23 L. Ed. 588.
[36] (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052.
[37] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph one of syllabus.
[38] Id. at paragraph two of syllabus.
[39] State v. Sallie (1998), 81 Ohio St.3d 673, 674.
[40] State v. Schaim (1992), 65 Ohio St.3d 51, 59, 1992-Ohio-31;State v. Hamblin (1988), 37 Ohio St.3d 153, 158-159; State v.Roberts (1980), 62 Ohio St.2d 170.
[41] State v. Schaim, supra.
[42] State v. Schaim, supra. at 59. State v. Dunkins (1983),10 Ohio App.3d 72, paragraph one of syllabus.
[43] Schaim, supra at 59.
[44] Id.
[45] See State v. White (1968), 15 Ohio St.2d 146.
[46] State v. Williams, 99 Ohio St.3d 439, 2003-Ohio-4164, P43, quoting State v. Lorraine (1993), 66 Ohio St.3d 414, 420.
[47] 72 Ohio St.3d 435, 439-440, 1995-Ohio-209, certiorari denied,516 U.S. 996, 133 L.Ed. 2d 439, 116 S.Ct. 534,
[48] Id.
[49] State v. Gus, Cuyahoga App. No. 85591, 2005-Ohio-6717.
[50] Id.