[Cite as *State v. Tell*, 2018-Ohio-1886.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-P-0031** |
| WILLIAM TELL, III, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2016 CR 00646.

Judgment: Affirmed.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Kristina Reilly*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Neil P. Agarwal*, 3732 Fishcreek Road, #288, Stow, OH 44224 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, William Tell, III, appeals his conviction and sentence for Rape, following a jury trial in the Portage County Court of Common Pleas. The issues before this court are whether victim impact evidence is admissible in a trial for Rape where the determinative issue is whether the sexual intercourse between the defendant and the victim was consensual or coerced; whether a conviction for Rape is against the manifest weight of the evidence where the victim's credibility is the primary evidence of guilt and her testimony contains some statements which are equivocal; and

whether a trial court commits reversible error by not notifying a defendant at sentencing that he is not to ingest drugs and must submit to random drug testing. For the following reasons, we affirm Tell's conviction and sentence.

{¶2} On September 9, 2016, the Portage County Grand Jury indicted Tell on a single count of Rape, a felony of the first degree in violation of R.C. 2907.02(A)(2).

{¶3} On September 23, 2016, Tell was arraigned and entered a plea of not guilty.

{¶4} On April 19, 2017, Tell's case was tried before a jury. The following testimony was given:

{¶5} Zachary Weiner testified that, in March 2016, he was living in an apartment at 927 South Water Street in Kent, Ohio, and that L.T. was a roommate. On the evening of March 4, he was spending the night in Cleveland Heights.

{¶6} At about four in the morning (March 5), Weiner received a call from a very emotional and upset L.T. who claimed she had been raped. Weiner contacted the Kent Police Department and drove back to Kent, which took about 40 to 45 minutes. He met L.T. at the apartment where police were conducting an investigation. He then drove her to a hospital in Akron to be examined.

{¶7} Weiner testified that L.T. was "devastated" by the incident and never returned to live at the apartment.

{¶8} Officer Dominic Poe of the Kent Police Department, on the night in question, responded to a reported rape at the Water Street apartment. He met L.T., who he described as crying and upset with makeup smeared on her face. She provided a description of the suspect and narrated the events of the evening. Officer Poe took pictures of L.T. and the apartment.

2

{¶9} Maurina Wagner, on March 5, 2016, was working as a Sexual Assault Nurse Examiner (SANE) at Akron General Hospital and conducted an examination of L.T. Wagner noted swelling, discoloration, and "tenderness with palpation" to her neck and a "linear abrasion on the left side of her labia majora and tenderness when it was palpated and swabbed." Wagner explained that such an abrasion may be caused by a lack of lubrication even during consensual intercourse and L.T. reported having consensual intercourse on March 3.

{¶10} Detective Karen Travis of the Kent Police Department was assigned to investigate L.T.'s case. Tell was identified as the suspect in the course of the investigation. Tell admitted engaging in intercourse with L.T. on the evening in question but maintained that it was consensual.

{¶11} Detective Travis testified as follows regarding L.T.'s phone records. At 2:08 a.m., she received a call from Tell. At 2:55 a.m., she called a friend, Colton McQuen, who did not answer. At 2:56 a.m., she received another call from Tell. Between 4:00 and 4:31 a.m., L.T. called McQuen three more times. Again, McQuen did not answer. At 4:37 a.m., she called Weiner.

{¶12} Beginning at 2:51 a.m., L.T. and McQuen texted each other. L.T.'s final text to McQuen, sent at an undetermined time, stated: "Can u for real call me I was just raped."

{¶13} L.T., a student at Kent State University, testified that, on the evening of March 4, 2016, she had been drinking with friends in downtown Kent. Early the next morning, she began the ten-minute walk to her apartment. As she was walking, she was joined by Tell, whom she had not met previously. As they walked they made small

3

talk and flirted.  A Kent police officer asked them if everything was fine and she said that it was.

**{¶14}** Tell followed L.T. inside of the apartment.  Tell was calling friends trying to find a ride to Cleveland.  L.T. told him that she needed to work the next morning but he could sleep on the couch.  L.T. described Tell as "really angry" that his friends were not coming to pick him up.  Feeling uncomfortable, she went to her room and locked the door.

**{¶15}** Tell forced his way into the room.  L.T. identified damage caused to the door frame by the entry in one of the State's photographic exhibits.  Tell pinned L.T. to her bed, and ripped her pants off.  She was kicking and screaming.  Tell choked her so that she would stop screaming and raped her.  Afterwards, her throat hurt and it was difficult to swallow or talk.  She was "very positive" that the labial abrasion was caused by the rape.

**{¶16}** When Tell finished, his friends were there to pick him up.  He told L.T. he did this because he cared about her and that she had to understand.  He left the apartment and was driven away in a vehicle waiting in the drive.

**{¶17}** Beginning in April 2016, L.T. began seeing a counselor because of the rape and has continued to do so.  She did not return to the apartment and arranged to have friends remove her belongings.  L.T. also left her on-campus employment and arranged to finish her coursework off-campus.

**{¶18}** On April 21, 2017, the jury returned a verdict of guilty.

**{¶19}** On June 19, 2017, a sentencing hearing was held.  Tell was sentenced to a term of imprisonment of nine years with five years of mandatory post release control.

Tell was also found to be a Tier III Sex Offender. Tell's sentence was memorialized in a June 21, 2017 Order and Journal Entry.

{¶20} On June 23, 2017, Tell filed a Notice of Appeal. On appeal, Tell raises the following assignments of error:

{¶21} "[1.] The trial court committed reversible error allowing the victim to give victim-impact evidence, during the guilt phase of the trial, specifically about how the sexual assault affected her personally."

{¶22} "[2.] Mr. Tell's rape conviction is against the manifest weight of the evidence."

{¶23} "[3.] The trial court committed reversible and plain error at the sentencing hearing by failing to comply with R.C. 2929.19(B)(2)(f)."

{¶24} In the first assignment of error, Tell argues that the trial court erred in allowing L.T. to testify, over defense counsel's objection, as to how the sexual assault affected her personally. Tell maintains that "psychological injury from an assault is not an element of rape, nor is it even relevant to determine whether a rape even occurred." The testimony, moreover, was "irrelevant and immaterial to the guilt or innocence of the accused as it principally serves to inflame the passion of the jury." Appellant's brief at 6.

{¶25} In Ohio, "[a]ll relevant evidence," defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," "is admissible." Evid.R. 402 and 401. "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).

5

**{¶26}** "The trial court has broad discretion in determining whether unfair prejudice substantially outweighs probative value under Evid.R. 403(A)," and "[a] reviewing court will not interfere absent a clear abuse of that discretion." *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 171; *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 40 ("the exclusion of *relevant* evidence under Evid.R. 403(A) is even more of a judgment call than determining whether the evidence has logical relevance in the first place").

**{¶27}** Tell notes that victim-impact testimony, such as L.T.'s testimony regarding her psychological trauma and its effect on her life, has often been found irrelevant and prejudicial, serving to elicit sympathy and bias from the jury. *State v. Milam*, 8th Dist. Cuyahoga No. 86268, 2006-Ohio-4742, ¶ 65.

**{¶28}** However, "[v]ictim-impact evidence is admissible in certain circumstances," such as "when it is related to 'the facts attendant to the offense.'" *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 134, quoting *State v. Fautenberry*, 72 Ohio St.3d 435, 440, 650 N.E.2d 878 (1995); *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 98 ("[e]vidence relating to the facts attendant to the offense is 'clearly admissible' * * *, even though it might be characterized as victim-impact evidence"). "[V]ictims may testify as to how a crime has impacted their lives, particularly when the 'circumstances of the victims are relevant to the crime as a whole.'" (Citation omitted.) *State v. Priest*, 8th Dist. Cuyahoga No. 89178, 2007-Ohio-5958, ¶ 41; *State v. Lorraine*, 66 Ohio St.3d 414, 420, 613 N.E.2d 212 (1993) ("[t]he victims cannot be separated from the crime").

**{¶29}** In the present case, the psychological and emotional impact of the crime on L.T. was clearly relevant and probative of ultimate issues in the case. As stated by

counsel for Tell in opening argument, there was "no dispute that Will and [L.T.] had sexual intercourse, the issue will be whether or not those sexual relations were consensual," and that issue depended "almost entirely on the credibility of [L.T.]"

{¶30} That L.T. sought counseling, abandoned the apartment, and ceased working and attending classes on campus were probative of the fact that the intercourse was not consensual since this behavior is more consistent with rape than consensual intercourse (or, in the language of the Rule, has the tendency to make the fact of coerced intercourse more probable than it would be without this evidence). This is the way someone who had been raped would be expected to act.

{¶31} Significantly, Tell avails himself of the same sort of evidence. He emphasized, for example, that "two days after this incident * * * Will sent [L.T.] a text asking how she's doing and giving her his new phone number." Just as is true of L.T.'s subsequent activity, this evidence is probative of whether the intercourse was consensual, in this instance tending to make the fact of coerced intercourse less probable. "Now if he just had raped her * * * [i]s he going to want to bring attention to himself and give her more opportunity to find out who he is and where he is? That's the last thing in the world he's going to do."

{¶32} Similarly, Tell also considers L.T.'s subsequent conduct to support his position that she willingly engaged in intercourse but subsequently lied about it. He notes that it was Weiner, rather than L.T., who contacted the police and that L.T. appeared reluctant to cooperate with the investigation. "You notice she wouldn't come to the door when the police arrived. * * * And the reason for that is she knew she created a hail storm. She knew she made a false allegation. She didn't want police involved. That's why she didn't come to the door that morning. That's why she refused

7

to give great detail to police officers, particularly Officer Travis when they tried to get details from her days later."

{¶33} This evidence is probative for precisely the same reason and in the same way that the evidence of L.T.'s impact testimony is probative: both L.T.'s and Tell's subsequent behavior, to the extent that it is consistent or inconsistent with rape, is indicative of whether the intercourse was consensual or coerced.

> The emotional scars of sexual abuse are as real as the physical scars caused by physical assaults. Just as the victim of a felonious assault may testify to the treatment needed as a result of the assault in order to prove that the assault actually did occur, so may the victim of a sexual assault testify to the lingering trauma suffered as a result of that abuse.

(Footnotes omitted.) *State v. Eads*, 8th Dist. Cuyahoga No. 87636, 2007-Ohio-539, ¶ 56; *State v. Smith*, 8th Dist. Cuyahoga No. 103483, 2016-Ohio-5512, ¶ 29 ("testimony about the nature and extent of the victim's injuries and his or her trauma is admissible because it is relevant in proving the facts attendant to the offense").

{¶34} There is nothing particularly extreme about L.T.'s impact testimony that renders it unfairly prejudicial. She testified that she abandoned the apartment because she was afraid: "I was scared that, you know, he knew where I lived." The testimony largely detailed actions she took after the attack rather than her subjective feelings. She did not describe nightmares or paranoia. Her conduct was within the range of what could be considered reasonable for someone in that situation.

{¶35} We acknowledge that in different circumstances such impact testimony may not be relevant or may be unfairly prejudicial, such as when the identity of the

8

assailant, rather than the fact of abuse, is in dispute. Thus, in *State v. Presley*, 10th Dist. Franklin No. 02AP-1354, 2003-Ohio-6069, there was testimony that the victim suffered nightmares, tried repeatedly to kill herself, and was placed in a residential home as a result of the alleged rapes. *Id.* at ¶ 83-84. Unlike the present case which turned on the issue of consent, the defendant in *Presley* denied the allegations completely. *Id.* at ¶ 13. Accordingly, the court of appeals concluded "such testimony provided no further significant proof of defendant's guilt and was substantially outweighed by the danger of unfair prejudice to defendant." *Id.* at ¶ 86. *Compare State v. Waters*, 8th Dist. Cuyahoga No. 103932, 2017-Ohio-650, ¶ 62 ("the testimony of the therapists and counselors served to show that the victims suffered as a result of Waters's actions, which rebutted Waters's claims that the victims * * * were conspiring against him").

{¶36} The first assignment of error is without merit.

{¶37} In the second assignment of error, Tell argues that his conviction is against the weight of the evidence.

{¶38} In Ohio, "a court of appeals has the authority to reverse a judgment as being against the weight of the evidence." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 7. "No judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause." Ohio Constitution, Article IV, Section 3(B)(3).

{¶39} "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A challenge to the weight of the evidence compels a reviewing court to

9

consider "the evidence's effect of inducing belief" and ask "whose evidence is more persuasive—the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387.

**{¶40}** "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley* at ¶ 21; *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3 ("every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts") (citation omitted).

**{¶41}** As noted above, the determinative issue in this case was consent – whether Tell "purposely compel[led]" L.T. "to submit by force or threat of force" to engage in sexual conduct – and that this issue depended upon her credibility. R.C. 2907.02(A)(2).

**{¶42}** Tell makes the following points in support of his position that L.T. lied about the rape: L.T. had admittedly been drinking throughout the evening, was flirtatious with Tell, allowed him into her apartment, and invited him to spend the night on her couch. L.T. claimed that Tell forced his way into her bedroom but the physical evidence of forced entry was equivocal. Officer Poe did not notice fresh damage to the door and determined the lock to be functioning.

{¶43} L.T.'s statements to Officer Poe were inconsistent. In one version she tried calming Tell after he forced an entry into her room and in another she began resisting as soon as he opened the door.

{¶44} L.T. testified that Tell choked her during the assault so that she could not breathe and "thought [she] was about to die because [of] being choked for so long." Yet L.T. did not mention that she was choked to Officer Poe who did not notice any physical injury in his examination of L.T. Tell was also supposed to have removed L.T.'s tight-fitting pants while he was choking her and she was kicking and screaming. None of the physical conditions reported during the examination at the hospital were inconsistent with consensual intercourse or necessarily implied sexual assault.

{¶45} Finally, Tell concludes that the "most damning and puzzling" evidence was L.T.'s statement to Officer Poe that Tell did not take her shirt off and cared only for himself. "This statement * * * sums up the reason why Ms. [L.T.] fabricated this assault": "she was highly intoxicated" and "upset that Mr. Tell had sex with her and then immediately left her without caring for her sexual needs." Appellant's brief at 14.

{¶46} Although the evidence presented is not wholly inconsistent with the possibility that L.T. fabricated the allegations, it is far from compelling that conclusion. None of the witnesses who interacted with L.T. that morning made any mention of her being intoxicated. L.T. reported that she had been choked to Nurse Wagner, who noted swelling and discoloration about her neck. L.T. did not claim that she was choked for the duration of the rape, but only to overcome her resistance. Her comment that she felt that she was about to die need not be taken literally, but would certainly reflect her state of mind if she was unable to breathe. Given the disruption to L.T.'s life as a result of the attack, a false allegation of rape hardly seems a proportionate response to

11

dissatisfaction with Tell's performance. As this case turned on L.T.'s credibility, we are particularly hesitant to contradict the estimation of her credibility by the jury which was able to observe her demeanor during live testimony. On balance, the greater amount of credible evidence supports Tell's conviction.

{¶47} The second assignment of error is without merit.

{¶48} In his third and final assignment of error, Tell asserts that the trial court committed reversible error by sentencing him without providing certain mandatory notifications. Specifically, "if the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall * * * [r]equire that the offender not ingest or be injected with a drug of abuse and submit to random drug testing as provided in section 341.26. 753.33, or 5120.63 of the Revised Code, whichever is applicable to the offender who is serving a prison term, and require that the results of the drug test administered under any of those sections indicate that the offender did not ingest or was not injected with a drug of abuse." R.C. 2929.19(B)(2)(f). "Thus, R.C. 2929.19(B)(2)(f) mandates that the trial court shall inform the defendant about submitting to random drug testing and to not use drugs in prison." Appellant's brief at 15. We disagree.

{¶49} Pursuant to subsection (f), the sentencing court is not mandated to notify the offender of anything, but merely to "require" him or her not to ingest or be injected with a drug of abuse and to "require," not notify, the offender to submit to random drug testing. The manner in which the court is to require the offender to abide by these conditions is not specified by the statute and is of no interest to this court at the present time.

**{¶50}** If the legislature had intended an offender to be so notified, the statute would have specified as much, as it did, for example, in subsections (a) ("notify the offender that the prison term is a mandatory prison term"), (c) ("[n]otify the offender that the offender will be supervised under section 2967.28 of the Revised Code after the offender leaves prison"), (d) ("[n]otify the offender that the offender may be supervised under section 2967.28 of the Revised Code "), (e) ("[n]otify the offender that * * * the parole board may impose a prison term"), and (g)(i) ("notify the offender of * * * the number of days that the offender has been confined") of the same statute.

**{¶51}** Assuming, arguendo, that "require" should be construed as "notify," we note that all appellate districts to confront this issue have essentially and "repeatedly concluded that an error under that section is harmless because the requirement is only intended to facilitate drug testing of prisoners in state institutions and creates no substantive rights for defendants." *State v. Watson*, 9th Dist. Summit No. 28218, 2017-Ohio-7856, ¶ 19 (cases cited); *State v. Abrams*, 12th Dist. Clermont Nos. CA2017-03-018 and CA2017-03-019, 2017-Ohio-8536, ¶ 23 (cases cited); *State v. Ruff*, 1st Dist. Hamilton Nos. C-160385 and C-160386, 2017-Ohio-1430, ¶ 26 (cases cited); and *State v. Wade*, 2d Dist. Clark No. 2015-CA-45, 2015-Ohio-5171, ¶ 10 (cases cited).

**{¶52}** The third assignment of error is without merit.

**{¶53}** For the foregoing reasons, Tell's conviction and sentence for Rape are affirmed. Costs to be taxed against the appellant.

TIMOTHY P. CANNON, J.,

COLLEEN MARY O'TOOLE, J.,

concur.

13