JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant William Roelle appeals from his convictions after a jury trial for kidnapping with a sexual motivation specification and for disseminating matter harmful to juveniles. Appellant also appeals from a portion of the sentences imposed for his convictions and from the trial court's ultimate classification of him as a sexual predator.
 {¶ 2} Appellant's assignments of error claim that his convictions rest upon insufficient evidence and are not sustained by the weight of the evidence, that the court admitted improper testimony during trial, that the court's classification of him as a sexual predator lacked an adequate basis, that the sexual predator law as applied to him is unconstitutional, and that he was inadequately informed of post-release control requirements.
 {¶ 3} Upon a thorough review of the record, this court agrees with appellant's insufficiency claim as to his conviction for disseminating matter harmful to juveniles. This court cannot agree, however, with his remaining claims, except to the extent that the state concedes the trial court made an error in the sentence with regard to informing appellant of applicable post-release control conditions.
 {¶ 4} Consequently, appellant's conviction for disseminating matter harmful to juveniles is reversed and vacated. His conviction for kidnapping with a sexual motivation specification and his classification as a sexual predator are affirmed. This case is remanded for a resentencing hearing for the limited purpose of properly informing appellant of the mandatory post-release control provisions that apply to him pursuant to R.C. 2967.28.
 {¶ 5} Appellant's convictions stem from an incident that occurred on the night of November 29, 2002. Two Cleveland police officers, Patricia Katynski and Timothy Burkhardt, received a radio dispatch to respond to 2160 W. 45th Street on a domestic violence complaint. They were informed the situation involved a woman assaulting a man. When they arrived, they saw the woman, later identified as Cheryl Smith, standing outdoors. Although she seemed intoxicated, she escorted them around to the rear of the house to meet with her boyfriend, the complainant.
 {¶ 6} The complainant identified himself as appellant William Roelle. He stated Smith had assaulted him, so Katynski accompanied Smith to another room to hear her side of the story. Smith remained "upset and crying;"[1] she indicated she had confronted appellant with an allegation concerning their seven-year old daughter, N,[2] who also was in the house.
 {¶ 7} Katynski returned to appellant to ask what he wanted them to do about his complaint. Appellant said "he just wanted her to leave." However, as Katynski led Smith out, Smith demanded something be done about the allegation. Smith's insistence persuaded Katynski to further investigate the underlying situation.
 {¶ 8} Katynski decided to leave Smith in the kitchen and to have Burkhardt take appellant to the patrol car while she interviewed N in another room. At about this time, vice detective John Graves arrived at the scene; he had heard the radio dispatch and decided to assist the patrol officers.
 {¶ 9} After assuring themselves of N's competence, Katynski and Graves began asking her what had occurred. As N described the incidents, Smith reacted by attempting to "go after" appellant; Katynski had to threaten to restrain her in order to prevent another episode of domestic violence.
 {¶ 10} N directed the officers to the living room as the place where the incidents with appellant occurred. She pointed out a bottle of lotion and indicated the television with its nearby box of videotapes as significant items in her story. She pointed out one videotape in particular; mixed in with the children's videotapes was one distributed by "Penthouse" which displayed on its carton scantily-clad women.
 {¶ 11} After speaking with N, Katynski radioed for additional police personnel, and soon she was joined by a photographer from the police department's Scientific Investigation Unit ("SIU"). A social worker from Cuyahoga County Children and Family Services ("CFS"), Velma Horton also arrived. The police officers located N's ten-year old brother in the house next door, questioned him, then, with Horton's approval, permitted Smith and her children to go to Smith's mother's house. Appellant was placed under arrest on charges of rape.
 {¶ 12} Appellant ultimately was indicted in this case on eleven counts. Counts one through five charged him with rape of a minor, in violation of R.C. 2907.02. Each of these counts contained both a furthermore clause indicating the victim had been less than ten years old and a sexually violent predator specification. Counts six through ten charged appellant with kidnapping, in violation of R.C. 2905.01, all with sexual motivation specifications. Count eleven charged appellant with disseminating obscene matter to juveniles, in violation of R.C.2907.31.
 {¶ 13} Appellant's case proceeded to a jury trial. The state presented the testimony of several witnesses, including Katynski, Graves, N's sixteen-year old stepsister, N's examining physician, N's maternal grandmother, the CFS social worker assigned to the family, and N herself. Additionally, the state admitted into evidence, inter alia, the Penthouse videotape N had pointed out to Katynski and Graves.
 {¶ 14} The jury ultimately found appellant guilty of only two of the charges alleged in the indictment, viz., count six, kidnapping with a sexual motivation specification, and count eleven, disseminating obscene matter to juveniles. Following these convictions, the trial court referred appellant for a psychiatric evaluation and a presentence report.
 {¶ 15} Ultimately, the trial court sentenced appellant to concurrent terms of five years and two years for his convictions. It also determined appellant to be a sexual predator.
 {¶ 16} Appellant presents seven assignments of error for review. His first, second, and third are addressed together as follows:
 {¶ 17} "I. Whether the evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that Mr. Roelle was guilty of kidnapping as alleged in count six.
 {¶ 18} "II. Whether the evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that Mr. Roelle was guilty of disseminating materials harmful to a minor (sic), as alleged in count eleven.
 {¶ 19} "III. Whether the convictions were against the manifest weight of the evidence."
 {¶ 20} Appellant argues his convictions are supported by neither sufficient evidence nor the weight of the evidence, therefore, the trial court erred in denying his motions for acquittal on these two charges and his convictions should be reversed. Appellant's argument is only partially persuasive.
 {¶ 21} Pursuant to Crim.R. 29(A), a trial court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether the material elements of a crime have been proven beyond a reasonable doubt. State v. Bridgeman (1978),55 Ohio St.2d 261. The evidence must be viewed in a light most favorable to the prosecution. State v. Dennis,79 Ohio St.3d 421, 430, 1997-Ohio-372.
 {¶ 22} With regard to an appellate court's function in reviewing the weight of the evidence, it must be determined from the entire record that in resolving conflicts in the evidence, the jury "clearly lost its way" and created "a manifest miscarriage of justice;" cases in which this occurs are "exceptional." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52. Thus, this court must remain mindful that the weight of the evidence and the credibility of the witnesses are matters primarily reserved for the jury. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 23} Appellant limits his sufficiency argument with respect to his kidnapping conviction, contending that N's testimony failed to prove she "did not consent to the sexual activity" as required by R.C. 2905.01(A)(5), the subsection with which he was charged.
 {¶ 24} However, N testified that the incidents occurred when she was "sleeping" in her bed. She stated appellant "carried" her to the living room where, with her on his lap, he put "lotion" on her "butt" and tried to "st[i]ck his wiener in [her] butt." N elaborated that her butt was used "to poop;" when asked if "anything" was "supposed to go inside of [her] butt?", she responded, "No." From this, a reasonable mind could conclude beyond a reasonable doubt that the sexual activity took place without N's consent.
 {¶ 25} Appellant next argues the jury must have lost its way in concluding appellant did not commit rape, but did commit one count of kidnapping with a sexual motivation. He contends N's narrative of the incidents so lacked corroboration by other evidence that the jury became confused. A review of the record does not compel agreement with appellant's position.
 {¶ 26} Although N apparently convinced the police officers and the social workers that appellant had completed insertion, her examining physician could find no evidence of anal penetration. This evidence, together with the trial court's refusal to instruct the jury as to any lesser-included offenses, actually supports the verdict.
 {¶ 27} R.C. 2907.02(A)(1)(b), rape, requires proof of "sexual conduct." R.C. 2905.01(A)(5), the kidnapping subsection pursuant to which appellant was charged, on the other hand, contains the broader element of "sexual activity," which includes "sexual contact." R.C. 2901.07(C). Thus, the jury reasonably could have concluded appellant had removed N from her bedroom at least once for the purpose of engaging in "sexual activity" against her will, having made only sexual contact with her, rather than having completed any sexual conduct.
 {¶ 28} Under these circumstances, appellant's conviction for kidnapping will not be reversed.
 {¶ 29} Appellant further argues his conviction for disseminating obscene matter to juveniles lacks support in the evidence. This argument has merit.
 {¶ 30} The officers indicated their attention had been drawn to the Penthouse videotape by N as the one, among the many in the box, which appellant watched while committing the sexual activity with her. However, at trial, N testified that she never had seen it, that she had not been asked by the officers to find it, and that she knew it was "nasty" only "because [she saw] it on the front cover" as the prosecutor showed it to her.
 {¶ 31} Moreover, the evidence established another adult lived in the home, but no testimony was presented to establish that appellant either owned the videotape or was aware of its presence in the home. Finally, the transcript of trial demonstrates the videotape never was played; while the trial court admitted it into evidence over appellant's objection, the trial court additionally stated it was "up to the jury" to view it.
 {¶ 32} The foregoing evidence was insufficient to sustain appellant's conviction on the charge of disseminating matter harmful to juveniles. The trial court, therefore, should not have permitted the jury to consider this charge.
 {¶ 33} For the foregoing reasons, appellant's first assignment of error is overruled, and his second and third assignments of error are sustained only in part.
 {¶ 34} Appellant's fourth assignment of error states:
 {¶ 35} "IV. The trial court erred in violation of the Sixth
and Fourteenth Amendments to the United States Constitution, Article I, Section 10 of the Ohio Constitution and Evidence Rules 801 and 802 when it permitted various State witnesses to testify about what they learned in conversations with the alleged victim and her family members, including family members who did not testify at trial."
 {¶ 36} Appellant argues the police officers improperly were allowed by the trial court to testify that N's family members gave them information during their investigation. He asserts the testimony was "indirect hearsay" in contravention of Evid.R. 802's prohibition of hearsay evidence. The record does not support his argument.
 {¶ 37} The admission or exclusion of evidence is a matter left to the trial court's sound discretion; therefore, it will not be disturbed absent an abuse of discretion. State v. Lundy
(1987), 41 Ohio App.3d 163, 169; State v. Duncan (1978),53 Ohio St.2d 215, 219.
 {¶ 38} An officer's testimony concerning the reasons for his or her actions during an investigation generally is not considered hearsay, because, rather than to prove the truth of the statement made to the officer, it is offered to show why the officer as the testifying witness acted in a particular manner.State v. Williams (1996), 115 Ohio App.3d 24; State v. Messer
(1995), 107 Ohio App.3d 51; cf., Crawford v. Washington
(2004), 72 U.S.L.W. 4229.
 {¶ 39} In this case, both Katynski and Graves were careful to limit their testimony. They described only what actions they took in response to the information they were given by each person to whom they spoke, rather than any specifics about what they were told. On the rare occasion when either of them strayed from this limit, the trial court sustained defense counsel's objection to the improper testimony.
 {¶ 40} Thus, the trial court did not commit error in its admission of evidence in this case. Appellant's fourth assignment of error, accordingly, is overruled.
 {¶ 41} Appellant's fifth assignment of error states:
 {¶ 42} "V. The evidence was insufficient to sustain the finding that Mr. Roelle was a sexual predator."
 {¶ 43} Appellant argues the trial court's classification of him as a sexual predator lacks foundation in the evidence presented. He contends the evidence was inadequate to establish the likelihood of his future criminal sexual conduct. Based upon the record, appellant's argument is unpersuasive.
 {¶ 44} R.C. 2950.09(B)(2) provides the factors a trial court is to consider in making a classification determination. Many of the listed factors involve conviction data that may be found in the court's file, but the list is not designed to be exclusive; the court must "consider all relevant factors." State v.Eppinger, 91 Ohio St.3d 158 at 164, 2001-Ohio-247. (Emphasis added.)
 {¶ 45} The trial court in this case was provided not only with appellant's criminal record, which included two previous convictions for the crime of sexual imposition on his minor step-daughter, but also with a psychological assessment.
 {¶ 46} The trial court noted appellant, as he had in the earlier sexual offense case, had victimized a very young girl over whom he had parental authority, and had denied any responsibility for the incident. Obviously, appellant had not participated in any treatment available for sexual offenders.
 {¶ 47} Appellant's scores in the two psychological actuarial instruments administered to him, together with his criminal history, led the court to place him in the "medium to high" risk category for sexual recidivism. On this record, the trial court found appellant to be a sexual predator.
 {¶ 48} This court cannot find at this juncture that the trial court's determination of appellant's status is unsupported by the weight of the evidence. State v. Malinowski (Sept. 6, 2001), Cuyahoga App. No. 78626; cf., State v. Cook, 83 Ohio St.3d 404,1998-Ohio-291. Therefore, appellant's fifth assignment of error also is overruled.
 {¶ 49} Appellant's sixth assignment of error states:
 {¶ 50} "VI. R.C. 2950.01 et seq. as applied to Mr. Roelle violates Art. I, Sec. 10 (sic) of the United States Constitution as ex post facto legislation, and violates Art. II, Sec. 28 (sic) of the United States Constitution as retroactive legislation."
 {¶ 51} According to his appellate brief, appellant "challenges Ohio's new version of Megan's Law because it imposes ex post facto punishment" in violation of the federal constitution and constitutes a "retroactive law" in violation of the state constitution.
 {¶ 52} Appellant's sixth assignment of error is overruled on the authority of this court's recent decision in State v.Baron, Cuyahoga App. No. 83080, 2004-Ohio-747.
 {¶ 53} Appellant's seventh assignment of error states:
 {¶ 54} "VII. The trial court erred when it failed to correctly advise Mr. Roelle of the consequences attendant to the imposition of post-release control."
 {¶ 55} Appellant's argument, viz., that at appellant's sentencing hearing, the trial court incorrectly stated the terms and conditions of post-release control as applied to him, is conceded by the state.
 {¶ 56} The appropriate remedy for this error, pursuant toState v. Harris, Cuyahoga App. No. 81677, 2003-Ohio-1003, is to remand this case for a limited resentencing hearing at which appellant fully is informed of R.C. 2967.28's applicable mandatory post-release control requirements.
 {¶ 57} Appellant's conviction for kidnapping with a sexual motivation specification, and his classification as a sexual predator, are affirmed. Appellant's conviction for disseminating matter harmful to juveniles is reversed and vacated.
 {¶ 58} This case is remanded for a limited resentencing hearing consistent with the disposition of appellant's seventh assignment of error.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for a limited resentencing hearing and execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Corrigan, A.J. Concurs.
 Blackmon, J. Concurs in judgment only.
[1]Quotes indicate testimony given by a witness at trial.
[2] Pursuant to this court's policy, the young female victim is referred to by only an initial.