JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Eric Green appeals from his convictions on seven counts of forcible rape of a minor, four counts of forcible rape, seven counts of kidnapping with sexual motivation specifications, five counts of felonious assault with sexual motivation specifications, and one count of unlawful restraint.
 {¶ 2} Green presents nine assignments of error. In them, he challenges the sufficiency of the indictment, claiming he lacked adequate notice of the separateness of each of the charges against him, the sufficiency and the manifest weight of the evidence presented to support his convictions, the trial court's decisions to admit certain testimony into evidence and to deny his request for new defense counsel, the prosecutor's comments during closing argument, and his trial counsel's performance.
 {¶ 3} This court has reviewed the record with Green's arguments in mind, but finds no error that compels the reversal of any of his convictions. Consequently, his convictions are affirmed.
 {¶ 4} Green's convictions result from his relationship with the victim's family. Green met the victim's mother, CB[1] in late December 2003. CB at that *Page 2 
time was not only recovering from cancer treatment, but also was separated from her husband. Within a week of meeting Green, she allowed him to move into her home.
 {¶ 5} CB lived with her two sons, Z, who was eleven years old, and his brother B, who was ten, on Arbordale Avenue in Solon, Ohio. The two boys enjoyed Green's company at first; he seemed to be "a cool guy"[2] and participated in outdoor sports with them.
 {¶ 6} Gradually, however, over the course of the next year, Green assumed more authority in the household. CB permitted him the use of the family car while she was at her workplace; Green would drive her there, then return home to care for the children. Since CB began to cede some parental responsibilities to him, the boys eventually perceived him as their primary disciplinarian.
 {¶ 7} Z testified that one day in March 2005, he stayed home from school due to illness. Green entered Z's bedroom to ask if he needed any medicine. Z responded affirmatively, and Green returned with some "Tylenol or something," *Page 3 
but then stated to Z that "he would make him feel better, and that's when [Green] started performing oral [sex] on me."
 {¶ 8} Z testified Green bent over him, placed his mouth on Z's penis, sucked on it for a time, then straightened and "started to masturbate." After Green ejaculated, he told Z that if Z mentioned the incident to anyone, Green "would have to leave and I wouldn't see him anymore."
 {¶ 9} Z described six distinct but similar incidents that took place in the Arbordale home. Each time, Green performed oral sex on Z while the two of them were alone together; sometimes, Green put a pornographic movie into the television for them to watch before he abused Z.
 {¶ 10} Z testified he was "scared and worried" after these incidents, and that he kept them to himself. He further stated that when he finally disclosed to his brother what was happening with Green, B refused to believe him.
 {¶ 11} In early January 2006, the family was forced to move. CB sent the boys to her parents' home while she and Green lived in a motel. The boys visited on weekends. Z testified that during this time, no incidents occurred. CB testified that in February, 2006 she discovered she had acquired the human immunodeficiency virus ("HIV").
 {¶ 12} CB obtained new housing in March 2006, when she and Green found a place on Spring Grove Avenue in Solon. The boys remained with their *Page 4 
grandparents to finish the school year, but continued to visit CB and Green on weekends.
 {¶ 13} By this time, CB and Green had problems in their relationship. CB was sure that only Green could have given her HIV. She was unhappy with some of the things he was doing. She testified that Green was not faithful to her. Furthermore, his method of punishment bothered her; when the boys committed a major infraction, Green would order them to "strip naked" and he would "beat them with a belt."
 {¶ 14} Z testified that Green resumed the sexual abuse once he and CB were in the new home. Z described the sleeping arrangements; while his mother and brother slept upstairs, he used the family room couch. Green "would come home late from his job, and then * * * he performed oral" sex on Z. Z stated this "happened, I think, two or three times." The boys moved fully into the Spring Grove house in June 2006.
 {¶ 15} On August 15, 2006, CB woke when she heard Green arrive home from work. She went downstairs and saw him "leaning over [Z] and bouncing." When she stepped closer, she observed Z's "penis sticking straight up in the air."
 {¶ 16} Shocked, CB ran to the telephone, but Green stopped her. Protesting to her, "[I]t's only happened three times," Green convinced CB not to *Page 5 
make a call to the police. CB indicated she was "afraid" and conflicted about what to do, and remained in that state for some time.
 {¶ 17} After this incident, Green moved into the garage for a time, then finally moved out completely by the end of November. CB informed the police about the incident on December 8, 2006. She and Z provided written statements, and were referred to the county's department of Children and Family Services for further assistance.
 {¶ 18} The Cuyahoga County Grand Jury subsequently indicted Green on eighty-eight counts. Counts one through thirty-four pertained to the period from March 2005 until Z's birthday on July 25, 2005, when he turned thirteen years old. Counts thirty-five through fifty-eight pertained to the period from July 26, 2005 until August 15, 2006. Counts fifty-eight through eighty-seven pertained to the entire period from March 2005 until August 15, 2006, and count eighty-eight pertained only to August 15, 2006.
 {¶ 19} In counts one through seventeen, Green was charged with forcible rape of a minor, with sexually violent predator ("SVP") specifications. Counts eighteen through thirty-four charged him with kidnapping, and contained sexual motivation and SVP specifications.
 {¶ 20} Similarly, in counts thirty-five through forty-six, Green was charged with forcible rape with SVP specifications, and in counts forty-seven through *Page 6 
fifty-eight, he was charged with kidnapping with sexual motivation and SVP specifications. Counts fifty-nine through eighty-seven charged Green with felonious assault[3] with sexual motivation and SVP specifications, and count eighty-eight charged him with unlawful restraint.
 {¶ 21} Green pleaded not guilty to the charges and retained counsel to represent him. The case eventually proceeded to trial; Green signed a waiver of his right to have a jury determine his guilt on counts fifty-nine through eighty-seven and on the SVP specifications.
 {¶ 22} The jury ultimately found Green guilty of the first seven counts, i.e., forcible rape of a minor, the corresponding kidnapping counts with sexual motivation specifications, and the count of unlawful restraint. The jury acquitted Green of the remaining counts.
 {¶ 23} For its part, the trial court found Green guilty of five counts of felonious assault with sexual motivation specifications, dismissed the remaining counts of felonious assault, and dismissed the SVP specifications. The court sentenced Green to a total term in prison of life plus four years, and classified him as a sexual predator. *Page 7 
 {¶ 24} Green challenges his convictions with the following assignments of error:
 "I. Defendant's convictions under inadequate carbon copy counts of rape, kidnapping and felonious assault, were improper and insufficient as a matter of law in violation of U. S. Constitution Amendments V and XIV, and Ohio Constitution Article I Section 10.
 "II. The carbon copy indictments for counts of rape, kidnapping and felonious assault were insufficient as a matter of law as they did not provide adequate protection to the accused from being twice put in jeopardy in violation of U. S. Constitution Amendments V and XIV, and Ohio Constitution Article 1 Section 10.
 "III. The accused's convictions for kidnapping were not supported by sufficient evidence as required by due process in violation of U.S. Constitution Amendment XIV and Crim. R. 29. "IV. The accused's conviction for unlawful restraint was not supported by sufficient evidence as required by due process in violation of U. S. Constitution Amendment XIV and Crim. R. 29. *Page 8 
 "V. Defendant's convictions for rape, kidnapping, felonious assault, and unlawful restraint were against the manifest weight of the evidence.
 "VI. The trial court erred by allowing the prosecutor to elicit hearsay testimony from witnesses [CB], Det. Anthony Thomas, and Det. David Moror.
 "VII. The prosecution violated Mr. Green's constitutional rights under Article I, Section 10 of the Ohio Constitution, the Fifth Amendment to the United States Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution when it engaged in improper argument designed to appeal to the passions of the finder of fact.
 "VIII. The court erred in overruling defendant Eric Green's request to disqualify counsel in violation of the Fifth, Sixth, and Fourteenth Amendments to the U. S. Constitution, Article I, Section 10 of the Ohio Constitution, and Crim. R. 44. "IX. Defendant Eric Green was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the U. S. Constitution and Article I, Section 10 of the Ohio Constitution." *Page 9 
 {¶ 25} Green argues in his first and second assignments of error that his convictions should be reversed because the indictment failed to charge each offense with enough specificity; he claims this deprived him of due process, caused him to be convicted on insufficient evidence on charges not subject to individual proof, and leaves him vulnerable to additional prosecution.
 {¶ 26} In addressing this argument, this court notes that Green raised no objection to the form of the indictment in the trial court, as required by Crim. R. 12(C); therefore, he has waived these claims of error for purposes of appeal. State v. Yaacov, Cuyahoga App. No. 86674,2006-Ohio-5321, ¶ 14, cf., State v. Ogle, Cuyahoga App. No. 87695,2007-Ohio-5066, ¶ 43; State v. Holder, Cuyahoga App. No. 89709,2008-Ohio-1271, fn.2.
 {¶ 27} Green's first and second assignments of error, therefore, are overruled.
 {¶ 28} Green argues in his third and fourth assignments of error that his convictions for kidnapping and unlawful restraint were based upon insufficient evidence. He thus intimates the trial court should have granted his motions for acquittal. In his fifth assignment of error, he argues further that the manifest weight of the evidence fails to support any of his convictions.
 {¶ 29} A defendant's motions for acquittal should be denied if the evidence is such that reasonable minds could reach different conclusions as to whether *Page 10 
each material element of the crime has been proven beyond a reasonable doubt. State v. Dennis, 79 Ohio St.3d 421, 1997-Ohio-372; State v.Jenks (1991), 61 Ohio St.3d 259; State v. Bridgeman (1978),55 Ohio St.2d 261. The trial court is required to view the evidence in a light most favorable to the state. State v. Martin (1983), 20 Ohio App.3d 172. Thus, circumstantial evidence alone may be used to support a conviction.State v. Jenks (1991), 61 Ohio St.3d 259.
 {¶ 30} With regard to an appellate court's function in reviewing the weight of the evidence, this court is required to consider the entire record and determine whether in resolving any conflicts in the evidence, the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. at 175. This court must remain mindful, however, that the weight of the evidence and the credibility of the witnesses are matters primarily for the jury to consider. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 31} In this case, when viewed in a light most favorable to the prosecution, the evidence with respect to each incident demonstrated that Green either forced or deceived Z into a situation in which Green could restrain him, after which Green used Z to engage in sexual activity. Green ensured Z's silence by issuing warnings about what could happen to the family unit if Z informed anyone. Moreover, Z indicated he did not feel free to reject Green's sexual *Page 11 
advances. Finally, as set forth previously in considering Green's first and second assignments of error, the state presented testimony that delineated a factual basis for each incident.
 {¶ 32} From the foregoing, reasonable minds could conclude that sufficient evidence was presented to support Green's convictions for kidnapping and unlawful restraint. State v. Roelle, Cuyahoga App. No. 83687, 2004-Ohio-4352.
 {¶ 33} To the extent Green relies in his third and fourth assignments of error upon the decision in State v. Logan (1979), 60 Ohio St.2d 126, this court notes that in sentencing Green, the trial court stated that the kidnapping counts "merge[d] for purposes of sentencing" with his rape convictions. Similarly, as to his conviction for unlawful restraint, he was sentenced to "time served." The trial court thereby complied with R.C. 2945.21. See, generally, State v. Cabrales,118 Ohio St.3d 54, 2008-Ohio-1625.
 {¶ 34} As to Green's fifth assignment of error, his convictions clearly found support in the manifest weight of the evidence. Z's recollections were detailed, remained consistent with each telling, and credible, and his description of Green's predilection for oral rape was corroborated by CB's testimony of the incident she witnessed. State v.Simpson, Cuyahoga App. No. 88301, 2007-Ohio-4301. Moreover, CB's testimony established that Green engaged in sexual *Page 12 
activity with Z despite knowing he could infect Z with the HIV in violation of R.C. 2903.11(B).
 {¶ 35} Since Green's convictions, therefore, were supported by both sufficient evidence and the manifest weight of the evidence, his third, fourth, and fifth assignments of error also are overruled.
 {¶ 36} Green argues in his sixth assignment of error that the trial court committed "plain error" in permitting the state to introduce into evidence some hearsay testimony in violation of Evid. R. 802.
 {¶ 37} Notice of "plain error," however, is to be taken only with "the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978),53 Ohio St.2d 91. In addition, error in the admission of evidence is harmless when there is no reasonable probability that the evidence contributed to the defendant's conviction. State v. Bayless (1976), 48 Ohio St.2d 73.
 {¶ 38} Green points to only one instance of the introduction of actual hearsay, since a review of Det. Thomas' testimony and Det. Morar's testimony reveals that neither of these two witnesses made any hearsay statements. In fact, the prosecutor asked every witness very restrictive questions during trial; obviously, the questions were designed to prevent the introduction into evidence of any hearsay. *Page 13 
 {¶ 39} However, at one point, CB testified that, after she observed the August 15, 2006 incident, she turned to Z when Green protested the same thing had "only happened three times to ask Z if what Green said were true, and Z responded, "* * * yes." Even if this testimony were not considered to fall under the exception contained in Evid. R. 803(2), in the face of the remaining evidence, including Z's own testimony, this single statement can hardly be considered to constitute plain error.
 {¶ 40} Consequently, Green's sixth assignment of error also is overruled.
 {¶ 41} In his seventh assignment of error, Green asserts that the prosecutor engaged in improper closing argument that poisoned the minds of the jurors against him.
 {¶ 42} The conduct of a prosecuting attorney during a trial generally cannot be made a ground of error unless the conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. State v. Papp (1978), 64 Ohio App.2d 203, cited with approval inState v. Maurer (1984), 15 Ohio St.3d 239. Moreover, it has been held a trial court must afford the prosecutor some latitude and freedom of expression during argument. State v. Apanovich (1987), 33 Ohio St.3d 19;State v. Vrona (1988), 47 Ohio App.3d 145.
 {¶ 43} Therefore, a defendant shall be entitled to a new trial only when a prosecutor makes improper remarks and those remarks substantially prejudice *Page 14 
the defendant. State v. Tibbets (2001), 92 Ohio St.3d 146; State v.Smith (1984), 14 Ohio St.3d 13. Thus, the test is whether, absent the prosecutor's remarks, the jury would have found appellant guilty.State v. Maurer (1984), 15 Ohio St.3d 239, 267.
 {¶ 44} In this case, the prosecutor's remarks did not constitute misconduct. Rather, the remarks only described reasonable inferences that could be drawn from the evidence presented, viz., that Green abused his position of trust, that Z's accounts of the incidents were graphic but personally embarrassing, and that the professionals to whom Z was referred performed their jobs. These remarks cannot be described as comments on either the guilt of the accused or the credibility of the witnesses. State v. Hemphill, supra, ¶ 105.
 {¶ 45} Accordingly, Green's seventh assignment of error also is overruled.
 {¶ 46} In his eighth assignment of error, Green complains that the trial court abused its discretion when it denied his request to "disqualify" counsel without conducting a hearing. Green further asserts in his ninth assignment of error that his trial counsel rendered constitutionally ineffective assistance. This court disagrees.
 {¶ 47} The record of this case demonstrates Green made his request for disqualification of counsel after several days of trial, after the state had *Page 15 
presented its entire case-in-chief, and without any indication up to that point that he was dissatisfied with counsel's previous work. Under the circumstances, the trial court was in the best position to determine that the request lacked any reasonable basis, and its refusal to grant Green's request does not constitute an abuse of discretion. State v.Simpson, Cuyahoga App. No. 88301, 2007-Ohio-4301, ¶ 73, 76.
 {¶ 48} As to Green's additional claim of ineffective assistance of counsel, it requires proof that counsel's "performance has fallen below an objective standard of reasonable representation" and, in addition, prejudice arises from that performance. State v. Bradley (1989),42 Ohio St.3d 136, paragraph two of the syllabus; see, also, State v. Lytle
(1976), 48 Ohio St.2d 391. The establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different."State v. Bradley, supra, paragraph three of the syllabus.
 {¶ 49} The burden is on the defendant to establish that counsel's performance fell below the objective standard, since in Ohio, a properly-licensed attorney is presumed competent, and this court will not question what can be considered to be tactical decisions. State v.Smith (1985), 17 Ohio St.3d 98. Green cannot meet his burden in the face of the record in this case. *Page 16 
 {¶ 50} Green first argues that counsel should have challenged the indictment as it contained "indistinguishable" counts. However, this decision falls within the realm of trial tactics. State v. Yaacov, supra, ¶ 32. Counsel likely counted on the improbability of a child victim being able to correlate his testimony at trial with each of the counts against his client. Such a "gamble" clearly paid off; Green was convicted of relatively few of the charges presented against him in the eighty-eight count indictment.
 {¶ 51} Moreover, as previously explained, counsel had no reason to challenge the testimony of some of the state's witnesses without violations of the rules of evidence having occurred. Similarly, the prosecutor's remarks fell within the parameters of acceptable closing argument; therefore, counsel had no duty to object. State v.Simpson, supra, ¶ 94.
 {¶ 52} The record of this case demonstrates that Green's counsel was well-prepared, knowledgeable, diligent in cross-examination of the state's witnesses, and able to secure Green's acquittal of many of the charges alleged in the indictment. Under these circumstances, Green cannot support the arguments he makes in his eighth and ninth assignments of error.
 {¶ 53} These assignments of error, accordingly, also are overruled.
 {¶ 54} Green's convictions are affirmed.
 It is ordered that appellee recover from appellant costs herein taxed. *Page 17 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. McMONAGLE, J., and ANN DYKE, J., CONCUR
[1] Pursuant to this court's policy, the identity of a sexual abuse victim is granted some privacy; therefore, his immediate family members' names will not be set forth in this opinion.
[2] Quotes indicate trial testimony.
[3] These counts related to Green's engaging in "sexual conduct with" Z, "with knowledge" that Green was an HIV carrier. *Page 1